POLLOCK, Appellant,

v.

RASHID et al. Appellee.

[Cite as *Pollock v. Rashid* (1996), 117 Ohio App.3d 361.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950874.

Decided Dec. 31, 1996.

362

*Susan Pollock, pro se.*

*Frost & Jacobs* and *Richard M. Goehler,* for appellee.

*Per Curiam.*

Plaintiff-appellant, Susan Pollock, filed a *pro se* complaint against defendant-appellee, Norma Rashid, a news anchor for television station WLWT, alleging defamation, invasion of privacy and intentional infliction of emotional distress. Pollock also named as defendants in the suit Melissa Ross, a former reporter for WLWT, and Bruce Corris, a former news director. However, she never obtained service on these two defendants.

Pollock is an inmate at the Warren County Correctional Institution. In her complaint, she alleged that she is a transsexual who has, through surgery and hormone therapy, physically altered her body to the point where she has the physical characteristics and appearance of a woman. Pollock alleged that she considers herself to be a woman and has held herself out to be a woman for many years.

After she was convicted of a felony, prison officials sent her to a male institution because she had been born a male. In prison, she suffered harassment, rape and physical assaults from the guards and other prisoners. She filed suit against the warden, seeking, among other things, to be transferred to a female prison, to be treated the same as other female inmates, and to continue her hormone therapy, the discontinuation of which was causing her severe medical problems.

On April 1, 1994, WLWT did a news report about Pollock's suit against the warden. Anchor Rashid introduced the story and Ross did the body of the report from the prison. According to Pollock, the news report "contained many false and inaccurate statements, in addition to being extremely biased and one-sided in nature." She alleged that Ross continually referred to her as "Mark Pollock" when her legal name, as used in the suit, has been Susan since 1975. During the report, the station showed a photo of a man with a beard who was extremely masculine in appearance, which the report identified as Pollock, although Pollock has looked like a woman for many years. Further, the news report left out numerous important facts set out in her suit against the warden, causing the entire broadcast to be biased. She claimed that the entire tenor of the report was to make her look ridiculous, like some burly male inmate who decided he wanted to wear lipstick, when in reality her suit dealt with important issues such as her lack of medical care and accommodations for her privacy and safety.

Pollock alleged that the reporters did not contact her to obtain her side of the story, nor did they examine the official court record which contained photographs showing her female appearance. On the air, they interviewed the warden and an attorney from the Attorney General's Office, who was representing the warden. In these interviews, they discussed how much money frivolous suits by prison inmates cost taxpayers each year, thus conveying the impression that Pollock's suit was without merit.

Pollock further alleged that after the broadcast, she immediately wrote a letter to Rashid, in which she complained about the factual errors and the one-sided tone of the report. She requested that the station run a retraction or a follow-up story to correct the misrepresentations in the original report. Ross wrote to Pollock stating that she presented the story as it was told to her by the warden and that she obtained the photograph used in the broadcast from the warden. Though Ross indicated that she would be interested in speaking to Pollock, no interview ever took place and Pollock's demands to the station for a retraction pursuant to R.C. 2739.03(C) went unanswered.

In response to Pollock's complaint, Rashid filed a motion to dismiss pursuant to Civ.R. 12(B)(6). In her motion, she argued that Pollock's defamation claim was barred by the statute of limitations, and that Pollock had not alleged facts sufficient to state a claim for invasion of privacy or intentional infliction of emotional distress. The trial court granted Rashid's motion to dismiss without stating its reasons for doing so. This appeal followed.

Pollock originally presented three assignments of error for review. However, she has withdrawn her second assignment of error, and we therefore decline to address it.

In her first assignment of error, Pollock states that the trial court erred in failing to enter findings of fact and conclusions of law as she timely requested. She claims that she is placed in a difficult situation in bringing this appeal because she does not know the court's reasons for granting the motion to dismiss. We find this assignment of error is not well taken.

Civ.R. 52 specifically states that findings of fact and conclusions of law "are unnecessary" for motions filed pursuant to Civ.R. 12. When a court dismisses a complaint pursuant to Civ.R. 12(B)(6), it makes no factual findings beyond its legal conclusion that the complaint fails to state a claim upon which relief can be granted. Thus, the court does not assume the role of factfinder and has no duty to issues findings of fact and conclusions of law. *State ex rel. Drake v. Athens Cty. Bd. of Elections* (1988), 39 Ohio St.3d 40, 41, 528 N.E.2d 1253, 1254. Accordingly, Pollock's first assignment of error is overruled.

In her third assignment of error, Pollock states that the trial court erred in granting Rashid's motion to dismiss. Pollock argues that she pleaded sufficient facts in her complaint to set forth claims for defamation, invasion of privacy, and intentional infliction of emotional distress. She further argues that her defamation claim was not barred by the statute of limitations because she did everything in her power to file the complaint before the statute of limitations expired, and it was only because the clerk of courts improperly refused to accept the filing of her complaint that it was filed out of time. We find this assignment of error to be well taken as to the defamation claim.

R.C. 2305.11 provides that a cause of action for defamation shall be commenced within one year after the cause of action accrued. In a defamation case involving mass media, the cause of action accrues at the time publication is made. *Guccione v. Hustler Magazine* (C.P.1978), 64 Ohio Misc. 59, 60, 18 O.O.3d 273, 273–274, 413 N.E.2d 860, 861; *Morgan v. Hustler Magazine, Inc.* (N.D.Ohio 1987), 653 F.Supp. 711, 717. See, also, *Lyons v. Farmers Ins. Group of Cos.* (1990), 67 Ohio App.3d 448, 450, 587 N.E.2d 362, 363–364. The news report was aired on April 1, 1994. Rashid argues that since the complaint was not filed until August 1995, it was filed out of time and the trial court properly dismissed the defamation claim on that basis.

However, the record shows that in March 1995, before the statute of limitations had run, Pollock tried to file her complaint along with a motion to proceed *in forma pauperis*. However, the clerk of courts would not accept it without payment of the filing fee. Consequently, Pollock filed a petition for a writ of mandamus in the Ohio Supreme Court. The clerk eventually agreed to accept Pollock's filing and to develop a policy regarding the acceptance of civil court filings by indigent persons.

In *Welfare Fin. Corp. v. Estep* (1960), 170 Ohio St. 391, 11 O.O.2d 120, 165 N.E.2d 789, the defendant attempted to appeal an adverse judgment. The appellate court affirmed the judgment because the clerk of courts failed to transmit the bill of exceptions to the trial judge for his signature as was then required by statute. The Supreme Court reversed, holding that defendant should not have been precluded from having her appeal heard on the merits "for failure of the clerk of courts to perform a ministerial act in connection with the bill of exceptions." *Id.* at 392, 11 O.O.2d at 121, 165 N.E.2d at 790. The court found applicable "[t]he general rule that the law will not permit a party to suffer detriment by reason of the neglect * * * of an officer charged with a public duty where such party, in the prosecution of a right, has done everything that the law requires him to do, and fails to attain his right wholly by such neglect." *Id.*, quoting *Cincinnati Traction Co. v. Ruthman* (1911), 85 Ohio St. 62, 96 N.E. 1019, paragraph one of the syllabus.

Similarly, in *Scott v. Orlando* (1981), 2 Ohio App.3d 333, 334–335, 2 OBR 377, 379, 442 N.E.2d 96, 98, the Sixth District Court of Appeals held that "a cause of action will not be barred by failure to obtain service within the prescribed time when such failure is caused by unreasonable delay attributable to the clerk of courts or the court itself." See, also, *Robinson v. Commercial Motor Freight, Inc.* (1963), 174 Ohio St. 498, 23 O.O.2d 139, 190 N.E.2d 441. ·

In this case, Pollock did everything she could to try to file her complaint on time, even to the point of filing a mandamus action. It was only through the fault of the clerk's office that she could not. Compare *State ex rel. Tyler v. Alexander* (1990), 52 Ohio St.3d 84, 555 N.E.2d 966 (notice of appeal delivered to prison mail room is not "filed with the court"). We do not believe she should be penalized for the clerk's failure to have a policy regarding civil indigent filings, a problem over which she had no control. Consequently, we hold that the actual filing date of the complaint should relate back to the time Pollock first tried to file her complaint in March 1995, which was within the one-year statute of limitations. The trial court should not have granted the motion to dismiss the defamation claim on that basis. See *Kotyk v. Rebovich* (1993), 87 Ohio App.3d 116, 119, 621 N.E.2d 897, 899.

We now address whether it was proper for the trial court to dismiss the defamation claim on the sufficiency of the complaint. A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and the trial court, in ruling on such a motion, must take all the allegations in the complaint as true, drawing all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. A court may dismiss a complaint on a Civ.R. 12(B)(6) motion only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the

plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; *Greenwood v. Taft, Stettinius & Hollister* (1995), 105 Ohio App.3d 295, 297, 663 N.E.2d 1030, 1031.

To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement. *Hersch v. E.W. Scripps Co.* (1981), 3 Ohio App.3d 367, 374, 3 OBR 430, 437–438, 445 N.E.2d 670, 678–679; *Mucci v. Dayton Newspapers, Inc.* (C.P.1995), 71 Ohio Misc.2d 71, 75, 654 N.E.2d 1068, 1071. As to the degree of fault, a private-figure plaintiff must prove by clear and convincing evidence that the defendant acted negligently. *Lansdowne v. Beacon Journal Publishing Co.* (1987), 32 Ohio St.3d 176, 179–180, 512 N.E.2d 979, 983–984.

Rashid relies upon R.C. 2317.05, the "fair report" privilege, which provides:

"The publication of a fair and impartial report of * * * the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents, thereof, is privileged, unless it is proved that the same was published maliciously, or that defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such suit or action."

To show that a publication falls within the privilege of R.C. 2317.05, the defendant must demonstrate that the publication is a substantially accurate report of the official record. *Oney v. Allen* (1988), 39 Ohio St.3d 103, 529 N.E.2d 471, paragraph two of the syllabus; *Dinkel v. Lincoln Publishing (Ohio), Inc.* (1994), 93 Ohio App.3d 344, 346, 638 N.E.2d 611, 613. A publication is substantially accurate if it "conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record." *Oney, supra,* at paragraph three of the syllabus.

In this case, the essence of Pollock's complaint was that inclusion of inaccurate information from outside the official record of her suit against the warden and the exclusion of relevant information caused the news report to mislead the public about the nature of her lawsuit and held her up to ridicule. She also alleged that she asked for a correction or clarification, but no action was ever taken. Therefore, the allegations of her complaint, construed in her favor, take the news report outside of the privilege in R.C. 2317.05 and state a claim for

defamation. See *Embers Supper Club, Inc. v. Scripps–Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 25, 9 OBR 115, 117–118, 457 N.E.2d 1164, 1167, overruled on other grounds in *Lansdowne* and *Oney, supra; Mucci, supra,* 71 Ohio Misc.2d at 76–77, 654 N.E.2d at 1072–1073. We are constrained by our standard of review on a Civ.R. 12(B)(6) motion. At this early stage of the proceedings, we cannot say that Pollock can prove no set of facts which would entitle her to relief. Consequently, we hold that the trial court erred in granting Rashid's motion to dismiss as to the defamation claim.

However, we reach a different result on the invasion-of-privacy and emotional-distress claims. Of the three types of actions for invasion of privacy recognized in Ohio, the one applicable to this case is the "publicizing of one's private affairs with which the public has no legitimate concern." *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph two of the syllabus; *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 166, 27 OBR 196, 198–199, 499 N.E.2d 1291, 1294. To recover under this theory, the plaintiff must prove the disclosure of a clearly private fact, a matter truly of private concern only. *Greenwood, supra,* 105 Ohio App.3d at 303, 663 N.E.2d at 1035; *Jackson v. Playboy Enterprises, Inc.* (S.D.Ohio 1983), 574 F.Supp. 10, 13. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public or to what the plaintiff herself "leaves open to the public eye." *Killilea, supra,* 27 Ohio App.3d at 167, 27 OBR at 199, 499 N.E.2d at 1295; *Jackson, supra,* 574 F.Supp. at 13–14. In this case, the news broadcast reported on facts that Pollock had already made public by the filing of her lawsuit against the warden. Consequently, she did not state a claim for invasion of privacy, and the trial court did not err in dismissing that claim. *Strutner v. Dispatch Printing Co.* (1982), 2 Ohio App.3d 377, 2 OBR 435, 442 N.E.2d 129.

As to the claim for intentional infliction of emotional distress, the Ohio Supreme Court has stated that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. To state a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 6 OBR at 426, 453 N.E.2d at 671; *King v. Bogner* (1993), 88 Ohio App.3d 564, 569, 624 N.E.2d 364, 367. In this case, the conduct alleged in the complaint does not, as a matter of law, rise to the extreme and outrageous level necessary for a prima facia case of intentional infliction of emotional distress. See *Bartlett v. Daniel Drake Mem.*

*Hosp.* (1991), 75 Ohio App.3d 334, 339, 599 N.E.2d 403, 406–407.   Consequently, the trial court did not err in granting Rashid's motion to dismiss as to that claim.

In sum, we sustain Pollock's third assignment of error in part.   We reverse the decision of the trial court granting Rashid's motion to dismiss as to Pollock's defamation claim, and we remand the cause for further proceedings on that claim only.   We affirm the decision of the trial court dismissing Pollock's claims for invasion of privacy and intentional infliction of emotional distress.

*Judgment affirmed in part*
*and reversed in part,*
*and cause remanded.*

MARIANNA BROWN BETTMAN, P.J., DOAN and HILDEBRANDT, JJ., concur.