DECISION.
Plaintiff-appellant Sony Electronics, Inc. ("Sony"), appeals the trial court's judgment granting defendant-appellee Grass Valley, Inc.'s ("Grass Valley"), motion to dismiss pursuant to Civ.R. 12(B)(6) and denying Sony's motion for relief from judgment pursuant to Civ.R. 60(B)(5). For the following reasons, we affirm.
Due to the procedural posture of this case, the following facts were derived from the complaint and the other pleadings filed by the parties. The Hamilton County Board of Commissioners ("the Board") was responsible for the construction of the Paul Brown Stadium, which Hamilton County owns and leases to the Cincinnati Bengals. In carrying out that responsibility, the Board hired an audio-visual consultant, Acoustic Dimensions, to advise on the selection and installation of audio-visual equipment for the stadium's production-control room. Both Sony and Grass Valley marketed their equipment to Acoustic in hopes that it would be installed in the stadium's production-control room, but Acoustic eventually recommended that Sony products be used. In the invitation to bid on the construction of the production-control room ("the TC-93 project"), the Board specifically instructed that Sony products be used in calculating the bid offer.
The Board awarded the contract to DSI Video Systems, Inc., d/b/a Diversified Systems, Inc. ("Diversified"). Diversified had specified the required Sony products in its bid. After Diversified and the Board executed the contract on November 24, 1999, Sony alleged, Grass Valley contacted Diversified and Acoustic and convinced them to use Grass Valley products instead of Sony products. On March 6, 2000, the contract between the Board and Diversified was amended by a change order under which certain Grass Valley products might be used in the production-control room instead of Sony products.
On August 25, 2000, Sony filed a complaint against Grass Valley alleging tortious interference with a contract, tortious interference with business relations, and a third claim for punitive damages. In response, Grass Valley moved to have the complaint dismissed for failure to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6). On December 28, 2000, after conducting a hearing on the motion, the trial court dismissed Sony's complaint in a journalized decision that was captioned "Entry Granting Defendant's Motion to Dismiss." The trial court then instructed Grass Valley to prepare a final judgment entry. Grass Valley forwarded the entry to Sony for its approval, but Sony refused to sign it. Instead, Sony filed an amended complaint on January 12, 2001, alleging tortious interference with business relations and civil conspiracy.
Grass Valley moved to have the amended complaint stricken, arguing that that it was a nullity, as Sony's complaint had already been dismissed, and it further moved for the entry of final judgment. The trial court signed the final judgment entry dismissing Sony's complaint and journalized it on January 26, 2001. On February 5, 2001, Sony filed its response to Grass Valley's motion to strike the amended complaint. As final judgment had already been entered on the case, Sony also filed, on the same day, a motion for relief from judgment pursuant to Civ.R. 60(B)(5).
Before the trial court could rule on the Civ.R. 60(B) motion, Sony appealed the judgment dismissing its complaint. (The deadline for filing an appeal from the judgment of dismissal was approaching.) This appeal was numbered C-010133. Sony then moved to have this court remand the case to the trial court for the limited purpose of ruling on the Civ.R. 60(B) motion. We ordered the remand and stayed the appeal. The trial court, after conducting a hearing on whether to provide relief from its judgment of dismissal, denied the motion. Sony timely appealed that final judgment. That appeal was assigned number C-010423. Sony now brings forth four assignments of error for our review. For purposes of this decision, we have consolidated the two appeals.
In its first assignment of error, Sony contends that the trial court erred by not applying Ohio principles of public contract law when granting Grass Valley's motion to dismiss and denying Sony's motion for relief from that judgment. We disagree.
Although Sony alleged in its original complaint that Grass Valley had acted in contravention of Ohio's competitive-bidding laws, Sony did not assert any claim for that violation or cite to any specific statute that Grass Valley had violated in any of its briefs or motions to the trial court. Rather, it was Grass Valley's alleged violation of these laws that was the "improper and illegal action" by Grass Valley that had caused the tortious interference with a contract and a business relationship. But our research reveals that the competitive-bidding laws set forth in R.C.307.86 and 153.01 et seq. are in place to govern the conduct of governmental entities such as the Board here, not the actions of a supplier such as Grass Valley.
Competitive-bidding laws are in place to ensure that there is "open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms."[1] Bidding laws also act to ensure that a governmental entity only awards and honors a contract to the contractor who is "the lowest and best bidder for the work."[2] To ensure a fair process, the bid from the prospective contractor must conform to the specifications listed in the invitation to bid, and the contract eventually entered into must conform to both the bid and the specifications.[3] Sony argues that it was a bidder, and, thus, that these laws operated to protect its interests. But Grass Valley and Sony were not "bidders" on the TC-93 project. Although Grass Valley and Sony competed to have their products installed in the TC-93 project, neither was invited to submit a bid to the Board for the use of their products; they were merely suppliers of products that would possibly be used in the TC-93 project. Diversified was the bidder actually seeking to win the contract for the TC-93 project.
Accordingly, the trial court did not err in failing to apply public contract law in determining whether to dismiss Sony's original complaint and whether to grant relief from the judgment of dismissal, as Ohio's competitive-bidding laws did not govern the actions of Grass Valley, a supplier to a bidder on the TC-93 project. The first assignment of error is overruled.
In its second assignment of error, Sony maintains that the trial court erred in dismissing Sony's original complaint, which asserted claims for tortious interference with a contract and a business relationship. The elements of tortious interference with a contract, which must be pleaded in the complaint, are (1) the existence of a contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages from that breach. Tortious interference with a business relationship has similar elements, but occurs when the result of the improper interference is not a breach of contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff.[4]
A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and the trial court, in ruling on such a motion, must take all the allegations in the complaint as true, drawing all reasonable inferences in favor of the nonmoving party.[5] But a trial court does not have to presume the truth of legal conclusions asserted in the complaint when they are unsupported by factual allegations.[6] A court may dismiss a complaint on a Civ.R. 12(B)(6) motion only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief.[7] This court reviews a dismissal for failure to state a claim upon which relief can be granted de novo.[8]
With respect to the claim of tortious interference with a contract, Sony alleged (1) that the Board and Diversified had entered into "an owner/contractor agreement for the TC-93 stadium project," (2) that the contract had incorporated the bid package submitted by Diversified, which specified Sony products, and (3) that "as the designated product supplier, Sony was a third[-]party beneficiary to the Contract between the Board and Diversified." Sony now maintains that its allegation that it was a "third party beneficiary" was sufficient to indicate that it had the right to bring an action on the contract between the Board and Diversified. Grass Valley argues that Sony's allegation that it was a third-party beneficiary was a legal conclusion unsupported by factual allegations. Grass Valley maintains that for Sony to have brought a cause of action on the contract it must have alleged facts indicating that the Board and Diversified entered into the contract "directly or primarily for the benefit of Sony." We agree.
Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio.[9] For a third-party beneficiary to be an intended beneficiary, the contract must have been entered into directly or primarily for the benefit of that person.[10] If the third party receives an incidental or an indirect benefit, this is not sufficient to provide it with a cause of action. "[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."[11]
Sony did not allege in its complaint that the contract between Diversified and the Board was intended or entered into to benefit Sony. The purpose of entering into the contract, as alleged in the complaint, was to construct the production-control room of the Paul Brown Stadium. At most, the contract was entered into to benefit the county and the public at large, not a supplier of some of the products that would be used in the construction.[12] As there were no factual allegations in the complaint from which it could reasonably be inferred that Sony was an "intended" third-party beneficiary to the contract, there was no set of facts that would have entitled Sony to relief on its claim of tortious interference with a contract.
Additionally, we observe that a tortious interference with a contract requires that there be a breach of a contract. There was no breach here, and Sony did not allege a breach. Sony did assert that the Board and Diversified entered into a change order on March 16, 2000, replacing the Sony production switcher and router with Grass Valley products. But an agreement by parties to modify the terms of a contract does not constitute a breach of that contract.[13] Thus, taking all of the factual allegations as true and construing them in favor of Sony, we hold that there were no set of facts that would have entitled Sony to relief on its claim of tortious interference with a contract.
We also hold that Sony's complaint did not set forth a proper claim for tortious interference with a business relationship. Sony must have asserted that Grass Valley's interference with Sony's business relationship with the Board and Diversified was improper.[14] Sony alleged that Grass Valley's improper conduct was in its violation of Ohio's competitive-bidding laws by contacting the Board and Diversified after the contract, specifying the use of Sony products, had been executed. As we observed in our discussion of the first assignment of error, Ohio's competitive-bidding laws did not govern the actions of Grass Valley, a supplier who was not bidding on the contract. Sony did not allege that there was any other "improper" conduct by Grass Valley. Thus, on the face of the complaint, Sony could prove no set of facts entitling it to relief for this tort.
Sony also asserted a third claim for punitive damages. Punitive damages are sought as a remedy for certain claims; they are not an independent cause of action. Accordingly, the trial court also properly dismissed that "claim." The second assignment of error is overruled.
In its third assignment of error, Sony maintains that the trial court erred by "signing a judgment entry in violation of the local rules of the Hamilton County Court of Common Pleas and in violation of Sony's right to file an amended complaint." Sony argues that it had the right, as a matter of law, to amend its complaint after the judgment entry dismissing its complaint was journalized but prior to the time when a final judgment entry, with a red stamp, as required by Local Rule 17 of the Hamilton County Court of Common Pleas, was entered in the record. Grass Valley argues that when the dismissal entry, which included an eight-page opinion by the trial court, was journalized, Sony's right to amend its complaint was terminated.
In Ohio, a party may amend its complaint once, as a matter of right and without leave of the court, at any time before a responsive pleading has been filed or the complaint has been dismissed.[15] If a responsive pleading has been filed, but the complaint has not yet been dismissed, the plaintiff may move for leave to amend the complaint pursuant to Civ.R. 15(A). We note that Sony never filed a motion requesting leave to file an amended complaint. Instead, Sony has maintained that it had a right, as a matter of law, to amend its complaint because a final judgment had not been entered.
Sony cites Bell v. Coen for the proposition that "a complaint may be amended without leave of court between the time the original complaint is dismissed and the actual formalization of the dismissal into a judgment entry." In Bell, the Ninth Appellate District held that the plaintiff could amend its complaint, without leave of court, after the court had issued written "findings of dismissal," because the dismissal had not yet been "formalized in a judgment entry."[16] Relying on Bell, Sony argues that the trial court's decision captioned "Entry Granting Defendant's Motion to Dismiss" did not qualify as an actual judgment entry pursuant to Civ.R. 54(A), Civ.R. 58 and Local Rule 17(A).
Sony's reliance on Bell for the proposition that the dismissal entry in the case sub judice did not qualify as a final judgment entry, and that, thus, Sony's time to amend its complaint without leave of court had not expired, is inapposite. The court in Bell did not hold that a final judgment pursuant to Civ.R. 58 must be entered upon the journal before a party's right to amend its complaint without leave of court is terminated. Rather, Bell merely required that an order of dismissal be entered upon the journal.[17] That requirement was met here.
The trial court issued an eight-page opinion as to why it was granting Grass Valley's motion to dismiss, ordered the dismissal, ordered costs to Sony, signed the entry, and entered it on the journal. The trial court then sent a copy of this opinion to the parties, accompanied by a cover letter that stated that this "original decision/entry has been signed and journalized with the Hamilton County Clerk of Courts." Under these circumstances, we hold that the dismissal had been reduced to a judgment entry for purposes of determining that Sony's right to amend its complaint once as a matter of law had been terminated.
We further note that Sony had almost three months to amend its complaint after Grass Valley had revealed some of the deficiencies in it. Sony did not do so. Instead, Sony defended its complaint, lost and refused to sign the final judgment entry submitted to it, but did not file written objections, pursuant to Local Rule 17, as to why it had refused to sign the judgment. It then filed an amended complaint fifteen days after the trial court had issued its opinion detailing the reasons for ordering the dismissal. These facts aptly demonstrate that it would be a waste of judicial resources to permit a party to amend its complaint without leave after the trial court had journalized a signed dismissal entry.
Accordingly, we conclude that the trial court did not violate Sony's right to amend its complaint. Thus, the third assignment of error is overruled.
In its fourth and final assignment of error, Sony maintains that the trial court erred in denying its motion for relief from the judgment of dismissal pursuant to Civ.R. 60(B)(5). We are unpersuaded.
This court will not reverse a trial court's decision on a motion for relief from judgment unless the trial court has abused its discretion.[18] Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[19] A party seeking relief from judgment pursuant to Civ.R. 60(B) must show (1) that he has a meritorious defense or claim to present if relief is granted, (2) that he is entitled to relief under one of the grounds set forth in the rule, and (3) that the motion is timely filed.[20]
Here, there is no dispute that the motion was timely filed. With regard to the other requirements, Sony asserts that its meritorious defense was that it had the right to amend its complaint without leave of court after the trial court had entered a signed dismissal entry upon the journal. Based on our discussion of the third assignment of error, we hold that this was not a meritorious defense. As Sony presented no other meritorious defenses, we hold that the trial court did not abuse its discretion in refusing to vacate the judgment of dismissal. The fourth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Painter, P.J., and Gorman, J., concur.
[1] Cedar Bay Constr., Inc. v. Fremont (1990), 50 Ohio St.3d 19,21, 552 N.E.2d 202, 204.
[2] See Seasons Coal Co., Inc., v. Cleveland, (Jan. 6, 1983), Cuyahoga App. No. 44123, unreported.
[3] See Pincelli v. Ohio Bridge Corp. (1966), 5 Ohio St.2d 41,213 N.E.2d 356.
[4] A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr.Trades Council (1995), 73 Ohio St.3d 1, 14, 651 N.E.2d 1283.
[5] Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192,532 N.E.2d 753, 756; Pollock v. Rashid (1996), 117 Ohio App.3d 361,367, 690 N.E.2d 903, 908.
[6] Schulman v. Cleveland (1972), 30 Ohio St.2d 196, 198, 283 N.E.2d 175,176.
[7] O'Brien v. Univ. Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 327 N.E.2d 753, syllabus; Pollock, supra, at 367-368, 690 N.E.2d at 908.
[8] Hunt v. Marksman Products (1995), 101 Ohio App.3d 760,656 N.E.2d 726.
[9] Thornton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158,161, 556 N.E.2d 1220, 1223.
[10] Emmitt v. Broph (1884), 42 Ohio St. 82, 88-89; Hines v. Amole
(1982), 4 Ohio App.3d 263, 268, 448 N.E.2d 473, 479.
[11] See Hill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, 521 N.E.2d 780.
[12] See Amborski v. Toledo (1990), 67 Ohio App.3d 47, 52,585 N.E.2d 974.
[13] See Bank One Trust Co. v. Wigner (June 9, 1988), Franklin App. No. 87AP-329, unreported.
[14] See Dryden v. Cincinnati Bell Telephone Company (1999),135 Ohio App.3d 394, 400, 734 N.E.2d 409, 414.
[15] See Civ.R. 15(A); Bell v. Coen (1975), 48 Ohio App.2d 325,327, 357 N.E.2d 392, 395.
[16] Bell, supra at 327, 357 N.E.2d at 395.
[17] Id.
[18] See GTE Automatic Elec., Inc. v. ARC Indus., Inc. (1976),47 Ohio St.2d 146, 148, 351 N.E.2d 113, 114; In the Matter of Kay B. v.Timothy C. (1997), 117 Ohio App.3d 598, 602, 690 N.E.2d 1366, 1368.
[19] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[20] Argo Plastic Products Co. v. Cleveland (1984), 15 Ohio St.3d 389,391, 474 N.E.2d 328, 330.