[Cite as *S. Shore Lake Erie Assets & Operations, L.L.C. v. Johnson*, 2025-Ohio-5043.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SOUTH SHORE LAKE ERIE ASSETS
& OPERATIONS, LLC,

  Plaintiff-Appellee,

  v.

LANCE B. JOHNSON, ET AL.,

  Defendants-Appellants.

:
:
:
:
:
:

No. 114777

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-977702

---

### *Appearances:*

Seeley, Savidge Ebert & Gourash, LPA, Daniel F. Gourash,
and Jeffrey S. Moeller, *for appellee.*

Lance B. Johnson, *pro se.*

LISA B. FORBES, P.J.:

{¶ 1} Pro se defendant/cross-plaintiff/third-party plaintiff, and now appellant, Lance B. Johnson ("Johnson") appeals from the decisions of the Cuyahoga County Court of Common Pleas granting partial summary judgment in favor of appellee South Shore Lake Erie Assets & Operations, LLC dba South Shore

Marine ("South Shore") and granting summary judgment in favor of third-party defendant-appellee Regal Marine, Inc. ("Regal Marine"). For the reasons that follow, we affirm the trial court's decisions.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In August 2022, Johnson's company, Knot Partners, LLC ("Knot Partners"), engaged South Shore to broker the sale of a 2022 Regal 26XO pleasure craft (the "vessel"), which Knot Partners had purchased in February 2021. As part of the brokerage agreement, Knot Partners was required to complete a fact sheet disclosing the vessel's history, including any known repairs, outstanding maintenance needs, or existing deficiencies. The brokerage agreement also included an indemnity clause whereby Knot Partners agreed to indemnify and hold South Shore harmless from any claims, demands, damages, suits, liabilities, costs, or expenses arising from any misrepresentation, omission, or concealment by Knot Partners relating to the vessel.

{¶ 3} South Shore also provided Johnson, as the sole member of Knot Partners, with an Initial Trade Facts & Disclosure Form (the "disclosure form"), which requested information on the vessel's "water/flooding history." When Johnson failed to complete the disclosure form, a South Shore representative contacted him by phone to obtain the requested information. During that call, Johnson allegedly misrepresented that the vessel had no history of flooding.

{¶ 4} South Shore took possession of the vessel and began preparations for its sale. During this process, South Shore's mechanics discovered that the vessel's

generator was not functioning properly. Acting in reliance on Knot Partners' disclosures that the vessel had not experienced flooding or other damage while in its possession, South Shore believed that any repairs required to fix the generator's issues were the result of a manufacturing defect and would, therefore, be covered under the manufacturer's warranty.

{¶ 5} In November 2022, the vessel was sold "as is" to a third-party buyer with the understanding that South Shore, in conjunction with the generator's manufacturer, would repair the generator under the terms of the manufacturer's warranty. During the process of trying to repair the generator however, South Shore and the manufacturer discovered signs of flooding damage to the generator. In light of this discovery, the manufacturer refused to warrant the repairs, which resulted in South Shore paying the costs of the repair.

{¶ 6} South Shore filed a complaint against Johnson and Knot Partners. The lawsuit alleged fraud against both Johnson and Knot Partners and raised additional claims seeking enforcement of the indemnity provision in the contract, and breach of contract against Knot Partners.

{¶ 7} On July 11, 2023, Johnson, acting pro se and under the assertion that he was "doing business as" Knot Partners, filed an answer and counterclaim against South Shore. The counterclaim asserted claims of negligence, gross negligence, breach of contract, and defamation. Additionally, on July 24, 2023, Johnson, again acting pro se and under the assertion that he was "doing business as" Knot Partners, filed a third-party complaint against Regal Marine Industries, Inc. ("Regal Marine"),

the manufacturer of the vessel. In it, Johnson alleged claims of negligence and breach of warranty based on purported design and manufacturing defects that he claims caused the generator's failure.

{¶ 8} The trial court entered an order on August 3, 2023, stating that Knot Partners had not answered South Shore's complaint against it and that it "must be represented by counsel." The order further stated that Johnson "may only proceed, pro se, individually, and any claims against Regal Marine Industries, Inc. by Knot Partners, LLC, must be brought by counsel." Thereafter, Knot Partners, through retained counsel, filed an answer and counterclaim, raising the same causes of action against South Shore that Johnson had previously raised. Knot Partners, through retained counsel, also filed a third-party complaint against Regal Marine, asserting the same claims as those set forth in Johnson's third-party complaint.

{¶ 9} During discovery, the depositions of Tom Mack ("Mack"), Michael Pettrey ("Pettrey"), and Johnson were taken. In his deposition, Mack explained that he was the general manager of South Shore during the events in question and that in an effort to determine what happened to the vessel's generator, he contacted the Mentor Harbor Yacht Club, where Johnson was a member and had previously stored the vessel. Mack explained in his deposition that he spoke with three individuals, one of those being Pettrey, who was the commodore of the yacht club. Mack testified that these individuals told him that Johnson's vessel had taken on water while at the yacht club because Johnson had failed to insert the bottom drain plug, leaving an open hole through which water entered the vessel. According to

Mack, these individuals described the vessel as being in a "swamped state," at the time.

{¶ 10} In his deposition, Pettrey confirmed that he had witnessed Johnson's vessel flood while docked at the yacht club. Pettrey testified that, in response to Mack's questions, he informed Mack that the rear of the vessel became submerged because of water intrusion through the drain hole, and that several yacht club members, including Pettrey, assisted Johnson in recovering the vessel by winching it up the launch ramp using a truck and boat trailer.

{¶ 11} Johnson, in his deposition denied that the boat had "flooded" as a result of the drain-plug incident, maintaining that there was a minimal amount of water intrusion and that this would not have caused the generator to malfunction.

{¶ 12} South Shore filed a motion for partial summary judgment, seeking dismissal of the counterclaims brought by Johnson and Knot Partners, as well as judgment in its favor on its breach-of-contract claim against Knot Partners. The motion did not seek summary judgment on South Shore's fraud claims against Johnson and Knot Partners. Regal Marine filed a motion for summary judgment on the claims asserted against it by Knot Partners in the third-party complaint.

{¶ 13} On October 21, 2024, the trial court issued a ruling on South Shore's motion for partial summary judgment. With respect to the breach-of-contract claim, the court granted summary judgment in favor of South Shore on the elements of duty and breach, reserving the element of damages for trial. The court also granted

summary judgment in favor of South Shore on all counterclaims asserted by Johnson and Knot Partners.

{¶ 14} On November 13, 2024, the trial court granted Regal Marine's motion for summary judgment, dismissing the third-party complaint filed against it by Knot Partners. That same day, South Shore moved for leave to voluntarily dismiss its fraud claims against Johnson and Knot Partners, with prejudice. The trial court granted that motion on December 5, 2024.

{¶ 15} A jury trial on the issue of damages related to South Shore's breach-of-contract claim against Knot Partners was held on December 9, 2024. The jury returned a verdict against Knot Partners, awarding South Shore $145,443.13 in damages.

{¶ 16} Johnson now appeals from certain trial court rulings, asserting nine assignments of error. For ease of review, these have been paraphrased and consolidated as follows:

> Assignments of Error Nos. One, Two, Three, Four, Six, and Eight: The trial court erred in granting summary judgment on South Shore's breach-of-contract claim as to the elements of duty and breach against Knot Partners because South Shore's complaint was not verified, the evidence was insufficient to support summary judgment in South Shore's favor without raising genuine issues of material fact, and Knot Partners had asserted a number of viable affirmative defenses to the action.

> Assignment of Error No. Five: The trial court erred in granting summary judgment in favor of South Shore on Johnson's counterclaims for negligence, gross negligence, breach of contract, and defamation.

Assignment of Error No. Seven:  The trial court erred in "leaving for trial" South Shore's fraud claim against Knot Partners and Johnson.

Assignment of Error No. Nine:  The trial court erred in granting summary judgment to Regal Marine, Inc. the yacht's manufacturer, on Johnson's third-party complaint against Regal Marine, Inc. for breach of warranty and negligence.

## II. LAW AND ANALYSIS

### A. Breach of Contract

{¶ 17}  Johnson's first, second, third, fourth, sixth, and eighth assignments of error challenge the trial court's rulings on South Shore's breach-of-contract claim against Knot Partners.  It is important to clarify that the present appeal is brought solely by Johnson in his individual capacity.[1]  While Knot Partners is a limited-liability company for which Johnson is the sole member, Johnson is separate and distinct from Knot Partners.  *See First Merit Bank, N.A. v. Washington Square Ents.*, 2007-Ohio-3920, ¶ 15 (8th Dist.) ("Limited liability companies are entities separate and distinct from their owners.").  Since Johnson was not a party defendant to South Shore's breach-of-contract claim, he lacks standing to appeal the trial court's rulings regarding that claim.  *See State ex rel. Winfree v. McDonald*, 2016-Ohio-8098, ¶ 8 (A party lacks standing to appeal an order by which it is not aggrieved.).  Accordingly, assignments of error Nos. one, two, three, four, six, and eight are hereby dismissed.  *See State ex rel. Sawicki v. Court of Common Pleas*,

---

[1] In a companion appeal, *S. Shore Assets & Operations, LLC v. Johnson*, 2025-Ohio-4950 (8th Dist.), Knot Partners, through its own counsel, has also filed an appeal from the trial court's rulings against it on summary judgment.

2009-Ohio-1523, ¶ 18-20 (dismissing the portion of an appeal that appellant lacked standing to assert).

## B. Counterclaims

### 1. Knot Partners' Counterclaims

{¶ 18} In his fifth assignment of error, Johnson argues that the trial court erred in granting summary judgment in favor of South Shore on his counterclaims for negligence, gross negligence, breach of contract, and defamation. Although Johnson, acting pro se and under the assertion that he was "doing business as" Knot Partners, filed counterclaims for negligence, gross negligence, breach of contract, and defamation on July 11, 2023, we note that the trial court, in an order dated August 3, 2023, explained that Johnson could not represent Knot Partners on its claims against South Shore and could only represent himself in his individual capacity. Following the court's issuance of this order, Knot Partners, through retained counsel, filed its own counterclaims for negligence, gross negligence, breach of contract, and defamation.

{¶ 19} Johnson's claims of negligence, gross negligence, and breach of contract stem from allegations that South Shore had not honored the brokerage agreement it entered into with Knot Partners. Because Knot Partners was the signatory to the brokerage agreement, these claims belonged to Knot Partners, not Johnson individually. The trial court's summary-judgment order reflects this distinction, recognizing that only the defamation claim was brought by Johnson individually.

{¶ 20} As an individual who was not a licensed attorney, Johnson lacked the legal capacity to assert the negligence, gross negligence, breach of contract, and defamation counterclaims on behalf of Knot Partners.[2] *See Kaferle v. MKT Holdings, L.L.C.*, 2018-Ohio-4208, ¶ 26-27 (8th Dist.). Furthermore, when Knot Partners, represented by counsel, did assert these counterclaims, the trial court granted summary judgment in South Shore's favor. In light of these facts, Johnson does not have standing to appeal the trial court's grant of summary judgment in favor of South Shore on Knot Partners' counterclaims for negligence, gross negligence, breach of contract, and defamation. Accordingly, we decline to address these arguments for lack of standing.

## 2. Johnson's Counterclaim for Defamation

{¶ 21} We now consider Johnson's argument that the trial court erred in granting summary judgment in favor of South Shore on his counterclaim for defamation. An appellate court reviews a trial court's ruling on summary judgment de novo, applying the same Civ.R. 56 standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Accordingly, the appellate court conducts an independent review of the record to determine whether summary judgment is appropriate, without affording any deference to the trial court's determination. *See Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 53 (8th Dist.).

---

[2] Johnson is a retired attorney who, at the time of the filings in this case, no longer held a license to practice law.

{¶ 22} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, in viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and that conclusion is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 23} On a motion for summary judgment, the moving party bears the initial burden of identifying specific facts in the record that affirmatively demonstrate entitlement to judgment in their favor. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment must be denied. *Id.* at 293. However, if the burden is met, the nonmoving party then assumes a reciprocal obligation to point to specific facts in the record showing a genuine issue of material fact for trial. *Id.* Summary judgment is proper if the nonmoving party fails to satisfy this burden. *Id.*

{¶ 24} In his counterclaim, Johnson alleged that South Shore, through its general manager, Mack, had "made numerous statements regarding the condition of [his] boat to the buyer of the boat, [South Shore's] employees, officials of the Mentor Harbor Yacht Club and Members of the Mentor Harbor Yacht Club of which Defendant Lance B Johnson was a Member in good standing." He further claimed that "[t]he statements of [South Shore] both verbally and in writing that the boat had swamped or was flooded or sunk were false" and that "[t]he statements of [South Shore] that [Johnson] knew that the boat had swamped or was flooded or sunk were patently false." Johnson also alleged that "[t]he statements of [South

Shore] that [Johnson] had made misrepresentations regarding the condition of the boat were false." As a result of these allegedly false statements, Johnson claimed he "ha[d] been humiliated at his own private club, resigned his membership and lost his initiation fees."

{¶ 25} To prevail on a defamation claim, a plaintiff must establish each of the following elements: "'(1) [that] a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.'" *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist. 1996). "A statement is defamatory if it tends to injure a person's reputation or exposes him or her to public hatred, contempt, ridicule, shame, or disgrace." *Anderson v. WBNS-TV, Inc.*, 2020-Ohio-6933, ¶ 27 (10th Dist.).

{¶ 26} In support of its motion for summary judgment on the defamation claim, South Shore attached Johnson's deposition transcript. South Shore highlighted that Johnson identified only two instances of alleged defamatory statements. The first involved a series of text messages that Mack sent to Johnson. In those texts, Mack accused Johnson of dishonesty regarding the vessel's flooding history. The second instance was Johnson's speculation that Mack had told members of the Mentor Harbor Yacht Club that Johnson had misrepresented the vessel's condition to South Shore.

{¶ 27} South Shore argued that the text messages between Mack and Johnson did not satisfy the "publication" requirement for defamation, because that element requires communication to a third party. With regard to Johnson's second argument that Mack had defamed him to members of the yacht club, South Shore argued that no evidence supported this accusation.

{¶ 28} Johnson filed an opposition brief to South Shore's motion for summary judgment. In it, Johnson no longer argued that the text messages between him and Mack were the basis for his defamation claim. Instead, he focused on Mack's investigation into the vessel's alleged flooding at the Mentor Harbor Yacht Club. Johnson asserted that both Mack and Pettrey admitted in their depositions that Mack had made derogatory statements about him to Pettrey. He also pointed to Mack's testimony that he spoke with three members of the Mentor Harbor Yacht Club about Johnson's alleged misrepresentations, which, according to Johnson, implied defamatory comments were made by Mack to those individuals. In support of this argument, Johnson filed his own affidavit, which stated that "By January, 2023, Members and Staff at Mentor Harbor Yacht Club had been told by Plaintiff's representatives that I was a liar and a cheat."

{¶ 29} Johnson also argued that a December 27, 2022 email from Mack to Johnson and the buyer's broker was defamatory. In the email, Mack had written that "the optics unfortunately are not in your favor as far as being trusted" and called Johnson a liar. The email also stated that "this incident is very widely known throughout [Mentor Harbor Yacht Club]." Johnson contended that the "incident"

referred to his alleged dishonesty about the flooding and that the email, sent to a third party, constituted a publication for purposes of defamation.

{¶ 30} Applying our de novo review, we conclude South Shore is entitled to summary judgment on Johnson's defamation claim and, therefore, affirm the trial court's decision.

{¶ 31} To begin, the text messages sent by Mack to Johnson do not meet the elements of defamation because a defamation claim requires publication to a third-party. *See Byrne v. Univ. Hosps.*, 2011-Ohio-4110, ¶ 32 (8th Dist.). Accordingly, there is no genuine issue of material fact as to whether the texts were defamatory; as a matter of law they were not.

{¶ 32} Next, contrary to Johnson's assertions, a review of the deposition transcripts submitted on summary judgment shows that neither Mack nor Pettrey admitted during their respective depositions that Mack made derogatory remarks about Johnson while speaking with Pettrey about the vessel taking on water at Mentor Harbor Yacht Club. While Johnson additionally argues that because Mack acknowledged speaking with two other yacht club members, an inference can be drawn that defamatory statements were made to them, we find this to be merely speculation.

{¶ 33} In his deposition testimony, Mack stated that his investigation into the vessel's flooding consisted of him speaking with three members of the yacht club, including Pettrey. When asked directly by Johnson whether he had told these individuals that Johnson had "misrepresented the condition of [the] vessel," Mack

answered: "I shared with them that we were missing information about water intrusion involving [the] generator. And I asked if there were any bits of information that might help me with that missing piece of information." Mack additionally explained:

> I heard three very similar stories about [the] vessel being launched at the ramp at Mentor harbor yacht Club. And later, potentially an hour later, coming back to the ramp in a very precarious state with the boat apparently flooded low — sitting low aft, water awash over the swim platform, in a very troubled state and taking on a lot of water. * * * And it did not have the drain plug installed, which would obviously let a lot of water into the boat in that period of time.

{¶ 34} After thoroughly reviewing Mack's deposition testimony, we see nothing that states nor implies that Mack made any derogatory remarks about Johnson to individuals at the yacht club.

{¶ 35} Pettrey — the only individual who Mack spoke with who was deposed — affirmatively stated that Mack made no such remarks. Specifically, when asked during his deposition whether Mack had accused Johnson of "lying or committing fraud or anything like that" Pettrey responded: "No, no. No, no. No. It was a very cordial conversation . . . ."

{¶ 36} In light of the evidence submitted by South Shore demonstrating that no defamatory statements had been made by Mack, under the summary-judgment standard, the burden then shifted to Johnson to present evidence establishing a genuine issue of material fact on this point. Johnson failed to meet this burden.

{¶ 37} The only evidence Johnson offers on this point is his own self-serving affidavit, in which he claims that representatives of South Shore told members of

the Mentor Harbor Yacht Club that he "was a liar and a cheat." Notably, Johnson fails to identify which yacht club members allegedly heard these statements or who among South Shore's representatives purportedly made them, whether that be Mack or some other person. Johnson's conclusory assertion that some unspecified South Shore's representative defamed him by calling him a "liar and a cheat" in front of other yacht club members is particularly problematic in light of Johnson's admission during his deposition that he did not know what, if anything, had actually been said that might be defamatory. Specifically, when asked by South Shore's counsel what defamatory statements had been made about him to yacht club members, Johnson admitted: "Well, I don't know. That's what we're going to find in discovery." The time for discovery has closed.

{¶ 38} In opposition to summary judgment Johnson failed to produce any evidence showing there remains a genuine issue of material fact as to whether Mack — or any other South Shore representative — made a false and defamatory statement about him to members of the yacht club. We find that without additional supporting evidence Johnson's statement in his affidavit is insufficient to meet his reciprocal burden on summary judgment. *See Maddox Defense, Inc. v. GeoData Sys. Mgmt.*, 2019-Ohio-1778, ¶ 23 (8th Dist.), quoting *Lucas v. Perciak*, 2012-Ohio-88, ¶ 16 (8th Dist.) ("'[A] nonmovant's own self-serving assertions, whether made in affidavit, deposition, or interrogatory responses, cannot defeat a well-supported summary judgment motion when not corroborated by any outside evidence.'"). Accordingly,

Johnson has failed to raise a genuine issue of material fact regarding whether Mack or another South Shore representative defamed him during the investigation.

{¶ 39} Finally, Johnson also fails to create a genuine issue of material fact with respect to the email communication sent by Mack to the buyer's broker and Johnson. In that email, Mack referred to Johnson as a liar and stated he could not be trusted. When viewing the email in the light most favorable to Johnson, even if it could meet the elements of a published, defamatory statement, the undisputed evidence in the record demonstrates that Johnson was not damaged by its publication.

{¶ 40} Notably, the only damages Johnson has referenced — whether in his complaint, deposition, or summary-judgment briefing — relate to his resignation from the Mentor Harbor Yacht Club and the loss of his initiation fee. Mack's email to the buyer's broker was not sent to anyone connected with the yacht club other than Johnson. The buyer's broker was not connected to the yacht club. Thus, because any claimed damages are unrelated to the single allegedly defamatory publication, summary judgment in favor of South Shore was appropriate.

## C. Fraud

{¶ 41} In his seventh assignment of error, Johnson argues that the trial court erred in leaving for trial South Shore's fraud claim against him. The record reflects that on December 5, 2024, the trial court granted South Shore's motion to dismiss, with prejudice, the fraud claim against Johnson and Knot Partners. Accordingly, there neither was, nor will there be, a trial on the fraud claim. Johnson's seventh

assignment of error is overruled as moot. *See Lundeen v. Turner*, 2020-Ohio-274, ¶ 7 (8th Dist.) (A question becomes moot when there is no actual controversy to resolve.).

## D. Third-party complaint

{¶ 42} In his ninth assignment of error, Johnson contends that the trial court erred in granting summary judgment in favor of third-party defendant, Regal Marine. The record reflects that on July 24, 2023, Johnson filed a third-party complaint against Regal Marine asserting claims of negligence and breach of warranty in relation to Knot Partners' purchase of the vessel at issue. However, as explained above, the trial court advised Johnson that he could proceed pro se in the case only in his individual capacity. Any claims against Regal Marine stemming from Knot Partners' purchase of the vessel must be brought by Knot Partners, the entity that had purchased the vessel from Regal Marine. Subsequently, while represented by its own counsel, Knot Partners filed its own third-party complaint against Regal Marine, asserting the same claims that Johnson had attempted to raise in his prior, rejected complaint. On November 13, 2024, the trial court granted Regal Marine's motion for summary judgment on Knot Partners' third-party complaint. As with the analysis above, Johnson lacks standing to appeal the grant of summary judgment in favor of Regal Marine on claims brought by Knot Partners. *See, e.g., State ex rel. Winfree*, 2016-Ohio-8098, at ¶ 8. Accordingly, we dismiss Johnson's ninth assignment of error for lack of standing to assert it. *See State ex rel. Sawicki*, 2009-Ohio-1523, at ¶ 18-20.

## III. CONCLUSION

{¶ 43} For the foregoing reasons, we dismiss Johnson's first, second, third, fourth, sixth, eighth, and ninth assignments of error for lack of standing. Regarding the fifth assignment of error, we decline to address arguments related to the counterclaims for negligence, gross negligence, and breach of contract against South Shore, because these counterclaims belong to Knot Partners, not Johnson in his individual capacity and, therefore, Johnson lacks standing to appeal the trial court's resolution of those claims. We affirm the trial court's ruling on Johnson's individual counterclaim for defamation, however, and overrule that portion of the fifth assignment of error. Finally, we overrule Johnson's seventh assignment of error as moot, because South Shore's fraud claim against Johnson was dismissed with prejudice prior to trial.

{¶ 44} Judgment affirmed.

It is ordered that appellant is assessed the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)