[Cite as *Dickinson v. Spieldenner*, 2017-Ohio-667.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Steven R. Dickinson

   Appellant

v.

Cheryl L. Spieldenner, et al.

   Appellees

Court of Appeals No. L-16-1041

Trial Court No. CI0201404424

**<u>DECISION AND JUDGMENT</u>**

Decided: February 24, 2017

* * * * *

Thomas A. Sobecki, for appellant.

Roman Arce and Shawn Nelson, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Plaintiff-appellant, Steven R. Dickinson, appeals the February 9, 2016 judgment of the Lucas County Court of Common Pleas which granted summary judgment in favor of appellees Toledo Public Schools ("TPS") and TPS employees Cheryl Spieldenner, Diane Irving, and Carol Thomas on his defamation and false-light invasion of privacy claims. Because we agree that no material issues remain, we affirm.

**{¶ 2}** The underlying, undisputed facts are as follows. In 1994, appellant began his employment with TPS as a physical education teacher; he was terminated on January 28, 2014. In 2011, following TPS restructuring and the closure of the junior high schools, appellant was placed in an elementary school. During much of this time and unrelated to his employment with TPS, appellant was a youth hockey coach.

**{¶ 3}** The incident precipitating appellant's termination with TPS occurred on October 21, 2013. On that date, a sixth-grade student hit appellant with a dodge ball after he was called out. Appellant then threw a ball at the student stating: "You don't throw the ball at the teacher, dummy." Following the incident, appellee Cheryl Spieldenner, Chief Human Resources Officer for TPS, completed an Educator Misconduct Reporting Form which was sent to the Ohio Department of Education ("ODE"). The form indicated that appellant "has engaged or may have engaged in conduct unbecoming to the teaching profession." The report further stated:

> On or about October 21, 2013, employee intentionally threw a dodge
> ball at a student striking him and calling him a "dummy". Employee has
> had multiple charges against him and has been subject to multiple
> investigations for a variety of reasons by the Lucas County Children
> Services Board. Further, he signed an agreement in 2000 regarding his
> inappropriate conduct with students.

**{¶ 4}** An internal TPS hearing on the record regarding the incident was held on November 12, 2013, before hearing officer, appellee Carol Thomas. Appellee Diane

2.

Irving, then TPS assistant superintendent and hearing representative who investigated the incident, opened the hearing stating (as paraphrased in Thomas' report): "Mr. Dickinson has engaged in a pattern of abusive behaviors which have prompted a plethora of charges including child endangerment, abuse and violations of a multitude of Policies and Procedures." According to the Thomas report, Irving further indicated that "Mr. Dickinson has been suspended from other entities than Toledo Public Schools. He has been suspended from coaching hockey for the same type of behaviors he is charged with today and these children are the same age as the children at Harvard Elementary."

{¶ 5} On November 21, 2013, Thomas issued her report recommending that appellant be terminated. The report first summarized the testimony presented on behalf of the TPS Board of Education ("BOE") and appellant via the Toledo Federation of Teachers. Thomas then extensively listed and quoted from the exhibits presented which included past incidents and discipline involving appellant and various state of Ohio and BOE policies. Thomas then stated that this was not appellant's first disciplinary hearing for improper conduct as a teacher or involving the use of excessive force against students. Thomas recounted a 1998 excessive force complaint which was ultimately addressed at building level. Next, a 2000 incident resulting in a signed agreement that appellant would not use excessive force against any student. Also, a 2002 ten-day suspension stemming from appellant charging a student to use the gym, and a 2008 warning regarding name-calling due to a child's hygiene. Finally, the report noted a 2009 consent agreement to attend anger management training regarding student discipline.

3.

**{¶ 6}** Notably Thomas' report referenced two investigations conducted by Lucas County Children Services ("LCCS"); the reports of which were admitted into evidence. Summarizing the first report, Thomas noted that appellant was accused of throwing a child in a garbage can but that the child had no injuries and appellant denied the charge. LCCS noted that appellant's act of calling the child names due to his hygiene was inappropriate. Next, Thomas noted that LCCS investigated allegations of sexual abuse and that appellant was suspended for three months. Thomas' report did not include the fact that LCCS found the charges to be "unsubstantiated" or that appellant's 2012 suspension during one of the investigations was with pay

**{¶ 7}** Pursuant to Thomas' recommendation, appellant was terminated from TPS' employment. His termination was upheld through local mediation and at the state level. Appellant has not appealed his termination to this court.

**{¶ 8}** On October 28, 2014, appellant commenced this action. Appellant's claim is that the above-named appellees, either by direct statements or omissions of fact as previously outlined, defamed him causing economic damages and medical injury. Specifically, appellant argues that the statements contained in various documents were either not accurate or were incomplete. Appellant asserted that the information was then the subject of a Public Records Request and contained in the December 15, 2013 Toledo Blade newspaper article. Appellant argued that as a result of the article, he lost several lucrative hockey coaching positions and suffered various stress-related health conditions.

4.

{¶ 9} On September 14, 2015, appellees filed their motion for summary judgment. Appellees argued that appellant could not establish a prima facie case of defamation against any of the parties. Specifically, appellees argued that the statements concerning appellant were true and that appellant's claim that they were "misleading" or contained material omissions were inaccurate and not actionable. Arguments were also made regarding privilege and immunity.

{¶ 10} In opposition, appellant stressed that appellee Spieldenner's October 30, 2013 ODE report which stated that appellant was the subject of "multiple charges" and "multiple investigations" was misleading because there were only two investigations and that the charges were false. Further, as to appellee Irving, her statements that appellant was engaged in "a pattern of abusive behaviors" which resulted in a "plethora of charges" was misleading. Further, Irving's statement that appellant was suspended from coaching hockey was false. Finally, as to Thomas her summation of the LCCS exhibits which omitted the fact that the charges were "unsubstantiated," was inaccurate and misleading.

{¶ 11} On February 9, 2016, the trial court granted appellees' motion for summary judgment. The court found that Spieldenner's statement that there were multiple charges was not false because multiple, by definition, means more than two. The court further noted that Spieldenner's failure to indicate that the LCCS charges against appellant were "unsubstantiated" was not actionable because the full LCCS reports were admitted into evidence at the hearing. As to Irving, the court similarly found that any statements regarding the LCCS investigations were not actionable. As to the statement that

5.

appellant was suspended from coaching hockey, the court concluded that the statement was not false based on appellant's admission that he sat out during the investigation. As to appellee Thomas, the court concluded that her statements in the November 21, 2013 report which failed to indicate that the LCCS charges were unsubstantiated or that his suspension was paid were not defamatory. Further, the court found that references to the disciplinary matter that was not a hearing on the record and the hockey coaching suspension dispute were not defamatory. The court also awarded summary judgment as to appellant's false-light invasion of privacy claims. This appeal followed.

{¶ 12} Appellant raises four assignments of error for our review:

[I]. The trial court erred when it held that Dickinson had failed to provide evidence of any false statement by Cheryl Spieldenner.

[II]. The trial court erred when it held that Dickinson had failed to provide evidence of any false statement made by Diane Irving.

[III]. The trial court erred when it held that Dickinson had failed to provide evidence of any false statement by Carol Thomas.

[IV]. The trial court erred when it held that Dickinson's false light claims failed for all defendants.

{¶ 13} We first note that in reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). Summary judgment will be granted when there remains no genuine issue as to any material fact and, when

6.

construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Further, we review de novo all the evidence and arguments presented in appellees' motion for summary judgment and appellant's opposition.

Appellant's first three assignments of error relate to the trial court's findings that appellant failed to provide evidence that the statements made by Spieldenner, Irving, or Thomas were false and, thus, could not establish the elements of defamation.

{¶ 14} The law of defamation is fully explained by the Supreme Court of Ohio as follows:

In Ohio, defamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9 quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7, 1995 Ohio 66, 651 N.E.2d 1283 (1995).

"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with

7.

the requisite degree of fault in publishing the statement." *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1996).

"[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372, 6 Ohio B. 421, 453 N.E.2d 666 (1983).

"In determining whether a statement is defamatory as a matter of law, a court must review * * * the totality of the circumstances" and by "read[ing] the statement[] * * * in the context of the entire [publication] to determine whether a [reasonable] reader would interpret [it] as defamatory." *Mann v. Cincinnati Enquirer*, 1st Dist. No. C-09074, 2010-Ohio-3963, ¶ 12, citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 253, 25 Ohio B. 302, 496 N.E.2d 699 (1986), and *Mendise v. Plain Dealer Publishing Co.*, 69 Ohio App.3d 721, 726, 591 N.E.2d 789 (1990).

[T]he words of the publication should not be considered in isolation, but rather within the context of the entire [publication] and the thoughts that the [publication] through its structural implications and connotations is calculated to convey to the reader to whom it is addressed. *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d 825, 840 (6th Cir.1988), *aff'd*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). *Am. Chem.*

*Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77-79.

**Spieldenner Statements**

{¶ 15} Appellant first argues that the trial court's interpretation of the term "multiple" as meaning two or more in regard to appellee Spieldenner's October 30, 2013 report to the ODE that appellant has been the subject of "multiple" LCCS investigations was error. Appellant extensively argues over the precise definition of "multiple." Appellees contend that even assuming that Spieldenner's statement was not technically accurate, summary judgment was still appropriate because appellant failed to show that Spieldenner acted with the requisite degree of fault.

{¶ 16} Reviewing the arguments of the parties we agree that multiple has been defined as more than one. *See* Merriam-Webster Collegiate Dictionary 816 (2003). Regardless, we agree that appellant has failed to show that the statement was motivated by ill-will or some improper purpose. In her affidavit, Spieldenner stressed that the form sent to the ODE was completed according to law and that she, in good faith, believed the information she included was "true and accurate."

{¶ 17} Appellant further argues that Spieldenner defamed him by failing to state that the allegations investigated by LCCS were unsubstantiated. Reviewing the record below, which includes the 2008 and 2012 LCCS letters stating that the allegations were

9.

unsubstantiated and absent any evidence that Spieldenner was at fault for any omission, we find the statements were not defamatory as a matter of law.[1]

**Irving Statements**

{¶ 18} Appellant contends that the court erred in finding that appellee Irving did not make a false statement of fact regarding appellant's suspension from coaching hockey. Appellant contends that his "voluntary" decision to sit out a few games was not a suspension. Appellant contends that he was entitled to have the conflicting affidavits construed in his favor. Specifically, Irving's affidavit states, in part:

4. Sometime before this hearing for the record, attorney Amy Natyshak discussed with me a three-page report titled, "Michigan Amateur Hockey Association Official Game Report Match Penalty," which documented that Steve Dickinson received a Match Penalty while coaching a youth hockey game in 2011. [a copy of the report was attached] In addition, before this hearing for the record, I was informed by Ms. Natyshak that according to the USA Hockey Rule Book, a coach who incurs a Match Penalty is suspended from participating in any hockey games and practices until the matter has been dealt with by the proper authorities.

---

[1] In fact, we note that the December 15, 2013 Toledo Blade article correctly states that the LCCS investigations found the allegations to be unsubstantiated.

10.

5. During the Steve Dickinson hearing for the record on November 12, 2013, I said that Mr. Dickinson was suspended from entities other than Toledo Public Schools. I said that Mr. Dickinson was suspended from coaching hockey for the same type of behaviors as he was charged with in the hearing for the record, and I said the children he coached are the same age as the children at Harvard Elementary. I said this because [the attached report] indicates that the boys Mr. Dickinson coached at the time he received a Match Penalty were age 10 and under, and the October 21, 2013 incident during gym class at Harvard Elementary involved a sixth grade boy.

6. During the November 12, 2013 hearing for the record, I asked Mr. Dickinson whether he was suspended from coaching hockey, his answer was, "No, in Ann Arbor a person attacked me on the bench; he was not allowed to come in to any Ice House for 2 years," but then Mr. Dickinson added, "Correct, I was not allowed to participate."

7. At the time of the Steve Dickinson hearing for the record, I believed Mr. Dickinson was suspended from coaching youth hockey as a result of the incident documented [in the attached exhibit.] I believed this to be true based on my knowledge of [the attached exhibit], and based on my knowledge of the fact that a Match Penalty results in a suspension under USA Hockey Rules.

**{¶ 19}** Appellees also provided the affidavit of GTAHA's former president, Michael Natyshak, who stated that appellant was, in fact, suspended during the investigation and that the suspension stood.

**{¶ 20}** Conversely, as to the Ann Arbor hockey incident, appellant stated in his affidavit:

> 6. Diane Irving states in her affidavit the following: * * *. Where she says I added, "Correct, I was not allowed to participate," this mischaracterizes what I said at the November 12, 2013 hearing. I kept insisting at that hearing that I had not been suspended from coaching hockey. I was probably asked the same question by Ms. Irving at least ten times at the hearing as to whether I had been suspended from coaching hockey. Each time I told her that I had not been suspended from coaching hockey because that's the truth, I was not suspended from coaching hockey. I told her that I had agreed to sit out as coach of the Toledo Cherokee team as a good faith gesture until the investigation was completed by the Greater Toledo Area Hockey Association (GTAHA), which was about two weeks. I further told Ms. Irving that I did not sit out as coach of the Honeybaked team during the investigation.

**{¶ 21}** Appellant also provided an affidavit of Don Manders, registrar and vice president of GTAHA, in which he denied authoring the report attached to Natyshak's affidavit and stated that:

12.

I cannot know what Natyshak had in mind when he used the term "suspension" in reference to coach Dickinson. However, whatever he had in mind, Dickinson was not suspended from all hockey activities as would be required under USA Hockey rules for a match suspension, but was simply refraining from participation in the Toledo Cherokee team until completion of the investigation.

{¶ 22} Appellant contends that these contradictory statements, when construed in his favor, preclude a summary judgment award. Reviewing the materials, in our view the verbiage used in appellant's supporting affidavits does not directly contradict the assertion that appellant was suspended from coaching hockey whether it was voluntary or involuntary, or whether it included all coaching or just the team he was coaching during the incident. The gist of the materials was that there was an incident and appellant was at fault to some degree, and appellant served a suspension. Accordingly, Irving's statements were neither false nor defamatory.

{¶ 23} Appellant further contends that Irving's opening statement at the November 2013 hearing was misleading. In her statement, as quoted infra, Irving indicted that appellant had engaged in a pattern of "abusive behaviors" which prompted a "plethora of charges." Appellant contends that by making these statements and failing to indicate which allegations were unsubstantiated, he was defamed by her omission. Further, appellant argues that the verbiage used was misleading. First, as stated above, the reports from LCCS were admitted into evidence. Next, it is undisputed that beginning in 1998,

13.

appellant was disciplined multiple times for incidents including the use of excessive force and discipline. Thus, we reject appellant's arguments.

## Thomas Statements

{¶ 24} As to hearing officer Thomas, appellant argues that she made a misstatement of fact regarding appellant being suspended from coaching hockey. Based on the above discussion we reject this argument. Further, appellant claims that Thomas' report failed to indicate that the allegations investigated by LCCS were found to be unsubstantiated and that during the 2012 LCCS investigation appellant was placed on paid leave. Again, the full report was admitted in the record and appellant has failed to demonstrate either fault or lack of good faith in Thomas' inclusion of the statements in her report.

## Qualified Privilege

{¶ 25} A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Lakota Local Sch. Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 647, 671 N.E.2d 578 (6th Dist.1996), citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d at 8. "A qualified privilege is recognized when a commonality of interest exists between the publisher and recipient of the communication and the communication is of a kind reasonably calculated to protect or further that interest." *Daubenmire v.*

14.

*Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914, 805 N.E.2d 571, ¶ 119 (12th Dist.), citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975).

{¶ 26} In the present case, appellant has provided no evidence that any of the contested statements were made outside of the school or school district setting. Appellant does argue that the statements relating to his coaching hockey should not be protected because they do not arise out of his employment with TPS. However, we need not reach the question of whether the hockey statements were privileged because appellant did not first demonstrate their falsity. *See Waters v. Ohio State Univ.*, Ct. of Cl. No. 2015-00457, 2016-Ohio-5260, ¶ 28, citing *Hahn v. Kotten*, 43 Ohio St.2d at 243. Moreover, we conclude that even if one could conceive that any of the statements at issue were false, they were made in furtherance of the individual appellees' roles as administrators for TPS and, thus, were protected under a qualified privilege. *Waters* at ¶ 28-30. Further, no actual malice was demonstrated as to the making of the statements.

{¶ 27} Based on the foregoing, we find appellant's first, second, and third assignments of error not well-taken.

### False-Light Invasion of Privacy

{¶ 28} In appellant's fourth and final assignment of error he reasserts his arguments that each appellee made either direct, or by omission, false statements. The Supreme Court of Ohio has recognized a tort claim for false-light invasion of privacy and defined it as follows:

15.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. (Restatement of the Law 2d, Torts (1977), Section 652E, adopted.) *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, syllabus.

{¶ 29} The main distinction between defamation and false-light is the information at issue must be "publicized" which is different than "published." *Id.* at ¶ 52. In other words, the information is disseminated to "the public at large, or to so many persons that the matter must be substantially certain to become public knowledge." *Id.* at ¶ 53.

{¶ 30} In addition, false-light invasion of privacy defendants are afforded at least as much protection as defamation defendants. *Waters v. Ohio State Univ.* at ¶ 49, quoting *Welling* at ¶ 58. Thus, the defense of qualified privilege may apply. *Id.* Moreover, the same reasons that necessitate the dismissal of a defamation claim may support the dismissal of a false-light claim. *Id.* at ¶ 50.

{¶ 31} Reviewing appellant's claim, we note that for the same reasons appellant's defamation claim fails his false-light invasion of privacy claims must fail. First, the statements made by the parties were not false. Further, even assuming that even one

16.

statement was false, there is no evidence of fault. Next, the statements were made in the course and scope of the appellees' employment and they were entitled to a qualified privilege. Finally, there is no evidence of reckless disregard or malice. Accordingly, appellant's fourth assignment of error is not well-taken.

{¶ 32} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                                            JUDGE

Thomas J. Osowik, J.              _____

James D. Jensen, P.J.                                                     JUDGE
CONCUR.

                                          _____
                                                                             JUDGE

17.