[Cite as *Baker v. Lifeline Field Marketing, L.L.C.*, 2017-Ohio-5675.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

William M. Baker, Jr.                                    Court of Appeals No. L-15-1224

    Appellant                                         Trial Court No. CI0201403332

v.

Lifeline Field Marketing, LLC                    **DECISION AND JUDGMENT**

    Appellee                                          Decided:  June 30, 2017

* * * * *

William M. Baker, Jr., pro se.

* * * * *

**OSOWIK, J.**

{¶ 1} Plaintiff-appellant, William M. Baker, Jr., appeals the July 29, 2015 judgment of the Lucas County Court of Common Pleas, denying his motions for default judgment and summary judgment against defendant-appellee, Lifeline Field Marketing, LLC.  For the reasons that follow, we reverse the trial court judgment, in part, and affirm, in part.

## I. Background

{¶ 2} William Baker, Jr., pro se, filed a complaint on July 29, 2014, against Lifeline Field Marketing, LLC. Baker's complaint is written in narrative form and the nature of his legal claims is subject to interpretation, however, he alleges in his complaint that he was working for Lifeline pursuant to an independent contractor agreement, soliciting applications for cell phones. The agreement, an unexecuted copy of which was attached to his complaint, describes that Baker was to "*generate applications for free Lifeline wireless equipment and wireless minutes from qualified applicants by staffing locations derived by Independent Contractor*." (Emphasis sic.) It provides that Baker was to be paid "*per account approved*," and it includes a list of rates that vary based on the number of applications approved. (Emphasis sic.) The agreement does not provide a start date, but it provides a termination date of December 31, 2015, "unless terminated earlier." It states that Lifeline may terminate the agreement "on 1 days notice to Independent Contractor for unsatisfactory performance."

{¶ 3} Baker alleges that on May 23, 2014, without prior notice, Lifeline disabled his promotion code, rendering him unable to process applications. Lifeline told Baker that it was doing so because he was being investigated for fraudulent use of EBT cards (i.e., food stamps),[1] and that his continued employment depended on the outcome of that investigation. Baker claims that he was never informed of the results of the investigation

---

[1] Baker alleges in his complaint that he was accused of "fraudulently using EBT cards." While it is not entirely clear, we have surmised from his other filings that Lifeline's claim was that Baker was improperly using EBT cards as a method of qualifying customers for products and services in order to increase his number of approved applications.

2.

and Lifeline ceased communicating with him. He alleges that Lifeline's stated reason for disabling his promotion code, effectively discharging him, was a pretext and that in truth, Lifeline was retaliating against him for refusing to provide his bank account and routing numbers.

{¶ 4} In his complaint, Baker explains that among other locations, he solicited cell phone applications at the Economic Opportunity Planning Association ("EOPA"), now known as Pathway, Inc. He claims that he had an employment opportunity with EOPA that was lost when he was forced to tell EOPA's director that he could not process applications for EOPA clients because he was being investigated for fraud. He also claims that Lifeline had promised to donate $1 to EOPA for every approved cell phone application Baker processed there, but failed to do so for April and May 2014.

{¶ 5} Baker alleges that Lifeline misclassifies its workers as "independent contractors" instead of "employees," thereby depriving workers of employee protections and avoiding taxes. He claims that he worked seven days a week, as well as overtime, but was paid less than minimum wage. He also complains that in reliance on his continued employment with Lifeline, he incurred expenses for wireless internet services and devices needed to process applications.

{¶ 6} Baker attempted to amend his complaint twice. His first amended complaint purported to name two additional defendants, Carl Bryant and Safelink Division, but the complaint was not properly served. He filed his second amended complaint on February 17, 2015, against only Lifeline.

3.

**{¶ 7}** The second amended complaint is also written in narrative form. In it, Baker restates many of his previous allegations, but also provides additional details. He claims that Lifeline knew he would have to tell EOPA why he was no longer processing applications, and while he acknowledges that Lifeline likely did not know of his employment opportunity with EOPA, he claims that such knowledge is not required to establish a claim of defamation. He reiterates that his contract promised employment until December 31, 2015, and that Lifeline failed to provide the required notice before terminating him. He says that his performance was "outstanding in every respect" and "beyond reproach," and he claims that he was a top producer for Lifeline.

**{¶ 8}** Baker also describes a confrontation with his supervisor during which they argued over who was responsible for securing EOPA as a location at which to solicit applications; Baker maintained that he had secured the location, and his supervisor maintained that she had. Baker claims that his supervisor assigned additional employees to the locations where he worked, thus diluting his business, but she retained the busiest, most profitable locations for herself.

**{¶ 9}** Baker requested that the trial court find that Lifeline breached his "employment" contract without just cause and defamed him. He sought damages of $15,000 for lost compensation, $15,000 in punitive damages for defamation, and reimbursement for equipment and services obtained by Baker in furtherance of Lifeline's business, including two tablets, a cell phone, and wireless internet services.

4.

**{¶ 10}** Carl Bryant, the sole member of Lifeline Field Marketing, LLC, purported to file responsive pleadings on behalf of Lifeline, but the trial court struck his filings because he is not a licensed attorney authorized to represent the LLC. It warned that it may grant default judgment should Lifeline fail to respond through a licensed attorney. When it failed to do so, Baker moved for default judgment and for summary judgment.

**{¶ 11}** In a decision journalized on July 29, 2015, the trial court denied Baker's motions. It began by interpreting Baker's legal claims to include (1) breach of the independent contractor agreement; (2) defamation; and (3) unlawful employment practices. It concluded that any claims relating to Lifeline's agreement to make donations to EOPA or its misclassification of workers' employment status to avoid tax obligations to the state did not belong to Baker and were not properly before the court.

**{¶ 12}** Turning to the claims belonging to Baker, the trial court recognized that while Lifeline had defaulted, effectively admitting the allegations in Baker's complaint, Baker still must establish damages, and he still must plead facts sufficient to support his claims. It addressed each of Baker's three claims.

**{¶ 13}** As to Baker's breach of contract claim, the trial court found that by failing to answer, Lifeline admitted the existence of the independent contractor agreement and admitted that it terminated the agreement because it was investigating Baker for fraudulent use of EBT cards. But the court also found that there is nothing in the agreement providing Baker with a right to challenge termination of the agreement and Lifeline was permitted to withhold commission payments for unqualified applications. It

5.

held that while Baker sought damages for breach of an "employment agreement" without just cause, the agreement with Lifeline was not, in fact, an employment agreement requiring just cause for termination. The court also suggested that because Baker was provided notice that his promotion code was being revoked, he was, therefore, supplied with "1 days notice" as provided in the agreement.

{¶ 14} The court recited language in the agreement indicating that the "CONTRACTING PARTY IS ONLY INTERESTED IN THE RESULTS OBTAINED BY THE INDEPENDENT CONTRACTOR." It found that the facts alleged by Baker concerned his satisfactory "performance," but not satisfactory "results" as required by the agreement. The court characterized Baker's allegedly fraudulent use of EBT cards as an acknowledgment that his results were questionable, and it found that Baker failed to allege that he processed acceptable applications for which no commission was paid or that Lifeline wrongfully rejected those applications. It also observed that the agreement placed the obligation for purchasing materials on Baker. It, therefore, denied Baker's motions for default judgment and summary judgment on Baker's claim for breach of the agreement.

{¶ 15} As to Baker's defamation claim, the trial court rejected this claim because Baker's complaint did not allege that Lifeline made any statement to EOPA; rather, Baker himself conveyed the allegedly defamatory statements to EOPA.

{¶ 16} Finally, as to Baker's claim of unlawful employment practices and discharge in retaliation for refusing to provide his bank account and routing numbers, the

6.

court held that R.C. 4112.01 et seq. does not extend to independent contractor relationships, therefore, Baker did not state a cognizable claim.

{¶ 17} Baker appealed the trial court's judgment and assigns eight errors for our review. The errors as assigned by Baker are verbose, repetitive, and, frankly, difficult to decipher, and we do not recite them here. Instead we paraphrase his assignments of error. Put simply, Baker claims error in the trial court's denial of his motions because (1) there were questions of fact as to whether Lifeline breached the contract; (2) there were questions of fact as to whether the independent contractor agreement was really an "employment" agreement; (3) his defamation claim is proper because even though it was he who published the allegedly defamatory statements to EOPA about the fraud investigation, he was compelled to do so; (4) Lifeline breached the independent contractor agreement when it discharged him without notice and without proof of unsatisfactory performance; (5) even though the agreement placed the obligation on Baker to purchase equipment, he did so in reliance on remaining employed until the agreement's termination date; and (6) his requested damages were reasonable. He clarified that he raised the issues of Lifeline's failure to make promised donations to EOPA and its practice of avoiding state taxes by misclassifying employees not for the purpose of recovering on these claims, but as evidence of Lifeline's bad acts and bad character.

{¶ 18} For ease of discussion, we limit our review here to the question of whether the trial court erred in denying Baker's motion for default judgment as to his claims for

7.

breach of contract and defamation.[2]  We note that he does not challenge the trial court

judgment as it relates to his claim of unlawful employment practices.[3]

## II. Law and Analysis

{¶ 19} Civ.R. 8(D) provides that "[a]verments in a pleading to which a responsive

pleading is required, other than those as to the amount of damage, are admitted when not

denied in the responsive pleading."  Under Civ.R. 55(A), where a defendant has failed to

plead or otherwise defend, the plaintiff may move for a default judgment.  "A default

judgment is proper against an unresponsive defendant as liability has been admitted or

'confessed' by the omission of statements refuting the plaintiff's claims."  (Internal

quotations and citations omitted.)  *Lopez v. Quezada*, 10th Dist. Franklin Nos. 13AP-389,

13AP-664, 2014-Ohio-367, ¶ 12.  We review a trial court's decision to grant or deny a

motion for default judgment for an abuse of discretion.  *Morrison v. Hunt*, 5th Dist.

Richland No. 17 CA 14, 2017-Ohio-4332, ¶ 21.

---

[2] Although Baker references factual questions and sought summary judgment in addition to default judgment, the "absence of an answer would require default judgment rather than summary judgment." *Commercial Invest. Assocs. v. Dean*, 11th Dist. Trumbull No. 2004-T-0103, 2005-Ohio-6714, ¶ 18.  As this court has recognized, "a court may afford a pro se litigant reasonable leeway in the construction of pleadings in order to reach the merits of the action." *State v. Rickard*, 6th Dist. Lucas No. L-16-1043, 2016-Ohio-4755, ¶ 3.  With this in mind, we have narrowed the scope of our analysis of Baker's appeal.

[3] In any event, it appears that Baker's claim of unlawful employment practices was aimed at establishing that he was an "employee" because he appears to believe that an employer must have "just cause" to terminate an "employee."  In Ohio, however, employment is "at will" unless an employment agreement provides otherwise, and an at-will employee may be terminated at any time, with or without case. *Sagonowski v. Andersons, Inc.*, 6th Dist. Lucas No. L-03-1168, 2005-Ohio-326, ¶ 49.  Here, regardless of whether Baker is an "employee" or an "independent contractor," the agreement specifies the sole basis for terminating the agreement before the expiration date:  "unsatisfactory performance."

8.

**{¶ 20}** Baker alleges that Lifeline breached the terms of the independent contractor agreement when it terminated the agreement without notice. While the trial court acknowledged that Lifeline admitted the allegations in the second amended complaint by failing to respond to it, it nonetheless found that Baker's complaint fails to state a claim upon which relief may be granted.

**{¶ 21}** "In order to prevail on a breach-of-contract claim, a plaintiff must demonstrate by a preponderance of the evidence that: '(1) the parties reached a valid and binding agreement; (2) that the defendant breached the terms of that agreement; and (3) that the nonbreaching party suffered damages as a result of the breach of contract.'" *Hinsch v. Root Learning, Inc.*, 6th Dist. Lucas No. L-12-1192, 2013-Ohio-3371, ¶ 55, quoting *Lavarre v. Fifth Third Secs., Inc.,* 1st Dist. Hamilton No. C-110302, 2012-Ohio-4016, ¶ 30.

**{¶ 22}** Baker's complaint alleges that (1) the parties entered into the agreement; (2) the agreement provides that it would terminate on December 31, 2015, unless terminated earlier; (3) the agreement specifies that it may be terminated "on 1 days notice to Independent Contractor for unsatisfactory performance"; (4) Lifeline terminated the agreement on May 23, 2014, without providing one days' notice despite the fact that Baker performed satisfactorily under the agreement and achieved outstanding results as a top producer, and (5) Baker suffered damages resulting from Lifeline's breach of the agreement. As such, his second amended complaint states a claim for breach of contract, and it was incumbent on the trial court to proceed to determine Baker's alleged damages.

9.

**{¶ 23}** As to Baker's defamation claim, the trial court again acknowledged that Lifeline admitted the allegations in the complaint by failing to respond to them, but it found that Baker's complaint does not state a claim for defamation because he did not allege that Lifeline published any statements to EOPA concerning its fraud investigation.

**{¶ 24}** "'To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.'" *Dickinson v. Spieldenner*, 6th Dist. Lucas No. L-16-1041, 2017-Ohio-667, ¶ 14, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).

**{¶ 25}** Baker acknowledges that publication of the false statement is a necessary element of defamation. He contends, however, that while Lifeline made no publication, it can still be held liable under the "forced republication" doctrine. Baker argues that he was compelled himself to publish the defamatory statement in response to questions from EOPA's director.

**{¶ 26}** "'Forced republication' provides for proof of publication where a defamed person is forced to republish defamatory statements to a third party, such as a person who is required to state the reason for leaving his or her former employer when completing an application for employment." *Schacht v. Ameritrust Co. N.A.*, 8th Dist. Cuyahoga No. 64782, 1994 Ohio App. LEXIS 1125, *8 (Mar. 17, 1994), fn. 3. While this doctrine is

10.

accepted in some jurisdictions, it has repeatedly been recognized that the Ohio Supreme Court has not adopted it. *Id.* *See also Guy v. McCartney*, 7th Dist. Jefferson No. 00 JE 7, 2002-Ohio-3035, ¶ 35 ("[N]o court in this jurisdiction has yet embraced the idea that an alleged victim of defamation can satisfy the publication element of the tort by publishing it himself, i.e. to prospective employers."); *Somogye v. Toledo Clinic, Inc.*, N.D.Ohio No. 3:11 CV 496, 2012 U.S. Dist. LEXIS 82339, *39 (June 14, 2012). We, therefore agree with the trial court that even though admitted by Lifeline, Baker's complaint does not state a claim for defamation.

{¶ 27} Accordingly, we find that the trial court abused its discretion in denying Baker's motion for default judgment as to his breach of contract claim, but we find no abuse of discretion with respect to Baker's defamation claim.

### III. Conclusion

{¶ 28} For the foregoing reasons, we reverse the July 29, 2015 judgment of the Lucas County Court of Common Pleas to the extent that it denied Baker's motion for default judgment on his breach of contract claim, and we remand the matter to the trial court for a determination of damages. We otherwise affirm the trial court judgment. Lifeline is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

11.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                     _____
                                                     JUDGE

Thomas J. Osowik, J.

                                       _____
James D. Jensen, P.J.                                      JUDGE
CONCUR.

                                       _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.