SINGER, J.
{¶ 1} This case is before the court on the appeal of appellant, Sandra Meeks Speller, from the September 16, 2016 judgment of the Lucas County Court of Common Pleas, granting summary judgment to appellees, Toledo Public Schools District Board of Education ("Board") and three Board administrative employees. For the *1070 reasons that follow, we affirm the trial court's judgment.
Assignment of Errors
{¶ 2} Appellant sets forth the following assignments of error:
1. Appellees failed to raise the affirmative defense of "honest belief" in their Answer; therefore, the trial court erred in granting summary judgment on this affirmative defense.
2. The "honest belief" defense of Federal case law is incompatible with Ohio Civ.R.56 and should not have been applied as contrary to Ohio procedural law.
3. The trial court erred in granting summary judgment.
Background Facts
{¶ 3} Appellant started working as a teacher for Toledo Public Schools ("TPS") in 1996. Starting in the fall of 2007, appellant was assistant principal at DeVeaux Middle School ("DeVeaux"), and for a short stint, appellant served as DeVeaux's acting principal.
{¶ 4} In January 2009, a new principal was hired at DeVeaux. At first, the new principal praised appellant's work, but by January 2010, the principal began to give appellant declining marks on her employee evaluations. By the end of the 2009-2010 school year, the principal had contacted his immediate superior regarding appellant's failure to perform her job duties and unprofessional conduct toward students and parents.
{¶ 5} In January 2011, DeVeaux's principal completed an employee evaluation for appellant wherein he recommended appellant be transferred and given assistance through an intervention program or a similar program for professional growth.
{¶ 6} Appellant was transferred to Spring Elementary School ("Spring") for the 2011-2012 school year. In early September 2011, Spring's principal and the Assistant Superintendent of the TPS Board met with appellant to discuss concerns about appellant's professionalism. On October 1, 2011, appellant was assigned a mentor.
{¶ 7} Complaints soon surfaced concerning appellant's behavior, including inappropriate language and conduct with students, parents and teachers, and numerous occasions of appellant being late to cover or failing to cover her cafeteria shifts during the 2011-2012 school year. Appellant disputed most of these claims as being misrepresented or false.
Procedural History
{¶ 8} In June 2012, a three-day internal hearing was held to address five disciplinary charges brought against appellant by TPS. On July 30, 2012, the hearing officer found the allegations were founded and constituted insubordination, and recommended that appellant's employment be terminated. Appellant appealed.
{¶ 9} The Board requested an impartial referee be appointed by the Ohio Department of Education ("ODE") to hear appellant's appeal. In November 2012, a six-day evidentiary hearing was held before an impartial referee. In January 2013, appellant filed a race discrimination charge with the Ohio Civil Rights Commission ("OCRC"). In May 2013, the referee issued a written recommendation not to terminate appellant.
{¶ 10} On June 25, 2013, the Board passed a resolution terminating appellant's employment because she engaged in a pattern of misconduct from the 2009-2010 school year through the 2011-2012 school year. The resolution contained specific reasons why the referee's recommendation was rejected.
*1071 {¶ 11} In July 2013, appellant filed a second charge with the OCRC claiming her employment was terminated in retaliation for the charge she filed in January 2013. The OCRC ultimately closed both cases, at appellant's request, without a determination.
{¶ 12} Also in July 2013, appellant appealed the Board's decision to the Lucas County Court of Common Pleas, being case no. CI13-3777.
Case No. CI13-3777
{¶ 13} In her amended complaint, appellant alleged the following claims against the Board: violation of R.C. 3319.16 (termination of contract without good and just cause); violation of R.C. 3319.12 ; malicious breach of contract; defamation; intentional infliction of emotional distress; unlawful gender and race discrimination at DeVeaux; unlawful race discrimination at Spring; unlawful race discrimination by the Assistant Superintendent of the Board; and, unlawful retaliation.
{¶ 14} The Board filed a motion to dismiss all of appellant's claims except the violation of R.C. 3319.16 claim, and filed a brief addressing that claim. The court granted the motion to dismiss with respect to the R.C. 3319.12 and malicious breach of contract claims. See Speller v. Toledo Pub. Schools Dist. Bd. of Edn. , Lucas C.P. No. CI13-3777, 2013 WL 12078742 (Dec. 10, 2013). The court also ruled on the R.C. 3319.16 claim, and affirmed the Board's decision to terminate appellant. The court found the Board presented substantial and credible evidence to support its charges and finding that it had good and just cause to reject the referee's recommendation, and issue a termination order. See Speller v. Toledo Pub. Schools Dist. Bd. of Edn. , Lucas C.P. No. CI13-3777, 2013 WL 12078744 (Dec. 12, 2013).
{¶ 15} In June 2014, appellant voluntarily dismissed, without prejudice, all of her remaining, unresolved claims. Appellant appealed the trial court's decision dismissing the R.C. 3319.12 and malicious breach of contract claims, as well as the trial court's ruling on the R.C. 3319.16 claim. On June, 30 2015, we affirmed the lower court's judgments in Speller v. Toledo Pub. School Dist. Bd. of Edn. , 2015-Ohio-2672, 38 N.E.3d 509 (6th Dist.).
Case Nos. CI14-3172 and CI15-2918
{¶ 16} On July 15, 2014, appellant filed a complaint against three Board administrative employees and John/Jane Does in the Lucas County Court of Common Pleas, being case no. CI14-3172.
{¶ 17} On June 8, 2015, appellant filed a complaint against the Board, in case no. CI15-2918, alleging the claims which she had previously dismissed without prejudice in case no. CI13-3777. Case no. CI15-2918 was consolidated with case no. CI14-3172. On October 14, 2015, appellant file a nine-count amended complaint against the Board, three administrators and John/Jane Does. In the consolidated amended complaint, appellant alleged: race and gender discrimination, hostile work environment in violation of R.C. 4112.02 against the Board and two administrators; race discrimination against the Board and two administrators; retaliation against the Board and one administrator; intentional infliction of emotional distress against all defendants; intentional interference with business relationship against the three administrators and John/Jane Does; false light against the three administrators and John/Jane Does; defamation; additional unlawful discrimination; aiding and abetting against all defendants.
{¶ 18} Appellees filed a motion for summary judgment contending appellant was terminated for good and just cause. Appellees outlined in their motion appellant's disciplinary issues during the 2009-2010, *1072 2010-2011 and 2011-2012 school years. Appellees asserted appellant could not establish a prima facie case of race or gender discrimination or unlawful retaliation. Appellees also set forth arguments in support of their motion as to appellant's false light and defamation claims. Appellant opposed appellees' motion.
{¶ 19} On September 16, 2016, the trial court granted appellees' motion for summary judgment. The court found appellant had presented a prima facie case for race and gender discrimination, but appellees had an honest belief in the non-discriminatory reasons given for appellant's termination. The court noted two courts[1] had previously determined appellees had good and just cause to terminate appellant's employment. The court further found the analysis for the discrimination claims applied to the retaliation claim and the additional unlawful discrimination claim, and as such, appellees were entitled to summary judgment on those claims. The court also found appellant's remaining claims were moot, and granted summary judgment to appellees on those claims as well. Appellant timely appealed.
{¶ 20} We will address appellant's third assignment of error first.
Third Assignment of Error
{¶ 21} Appellant contends she challenges dismissal of all of her claims, but discusses only the race and gender discrimination claims. Appellant maintains the trial court rejected all of her other claims because she could not create a genuine issue of material fact as to the discrimination claims. Appellant refers to several pages in her opposition to the motion for summary judgment for arguments in support of her other claims.
Summary Judgment Standard
{¶ 22} Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Accord Lopez v. Home Depot, USA, Inc. , 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, 2003 WL 1962360, ¶ 7. When a properly supported motion for summary judgment is made, the non-moving party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E) ; Riley v. Montgomery , 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).
{¶ 23} We review a trial court's summary judgment decision on a de novo basis. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we undertake our own independent examination of the record and make our own determination of whether the moving party is entitled to summary judgment. Dupler v. Mansfield Journal , 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).
Analysis
Discrimination Based on Sex and Race
{¶ 24} R.C. 4112.02(A) states it is "an unlawful, discriminatory practice for any employer, because of the race, color, religion, sex, * * * of any person to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment."
*1073 {¶ 25} In Ohio, an employee may establish discriminatory intent directly or indirectly using the analysis set forth in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ceglia v. Youngstown State Univ. , 2015-Ohio-2125, 38 N.E.3d 1222, ¶ 15 (10th Dist.). Under the three-step McDonnell analysis, the employee must first establish a prima facie case of discrimination. Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Com. , 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981). The employee must show she was "(1) a member of a protected class, (2) discharged, (3) qualified for the position, and (4) replaced by a person from outside the protected class." Stookey v. S. Shore Transp. Co. , 6th Dist. Erie No. E-11-044, 2012-Ohio-3184, 2012 WL 2866679, ¶ 10. "[T]he fourth prong may also be satisfied by facts that establish the employee was a member of a protected class and he or she was treated differently than similarly situated, non-protected employees engaging in the same or similar conduct." Id.
{¶ 26} In order for the employee to show that more favorably treated non-protected employees are in fact "comparables," the employee " 'must show the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " (Citations omitted.) Ferguson v. Lear Corp. , 155 Ohio App.3d 677, 2003-Ohio-7261, 802 N.E.2d 1141, ¶ 22 (6th Dist.).
{¶ 27} Here, appellant has not presented any direct evidence of discrimination; therefore, she must establish a prima facie case of race and gender discrimination in order to shift the burden of production to appellees. It is undisputed that appellant is a member of two statutorily protected classes, she was terminated, and she was qualified for her position. Thus, the only dispute is whether appellant was replaced by a person from outside of the protected class and/or whether there was a comparable person from outside of the protected class who was treated more favorably than appellant.
{¶ 28} In her memorandum in opposition to appellees' motion for summary judgment, appellant argued she was replaced by a white male and there were numerous comparable, non-protected employees who were disciplined but not terminated. More specifically, appellant contends in her affidavit that ten white male employees and two white female employees were disciplined for various charges lodged against them, but the employees were not terminated by the Board.
{¶ 29} Upon review, appellant's "comparables" were not "similarly situated in all respects," as required by Ferguson . Appellant offered no evidence that the white employees dealt with her supervisor, were subject to the same standards, or engaged in the same conduct. Id. at ¶ 22.
{¶ 30} With respect to conduct, most of the white employees offered by appellant as "comparables" had two charges levied against them, and the most charges made against any one employee were three charges. In contrast, the record shows appellant was terminated for a myriad of reasons: she displayed conduct which was inappropriate and contrary to the Board's policy of treating students with respect; she left students unattended in a classroom; she failed to cover her assigned lunchroom responsibilities on numerous occasions; she had rough and inappropriate *1074 physical contact with students; she made inappropriate statements to parents; she used inappropriate language with students; she violated the principal's written directive; and, she wrongly criticized a teacher and school counselor for reporting suspected child abuse.
{¶ 31} Clearly, the charges lodged against the white employees were not as extensive as the charges lodged against appellant. We therefore find appellant has failed to meet her burden to produce evidence that comparable, nonprotected employees were treated more favorably than appellant.
{¶ 32} Appellant also argued she was replaced by a white male. In support, appellant avers in her affidavit "my information is that I was in fact replaced by a white male who previously served at the Lakota School District."
{¶ 33} Civ.R. 56(E) requires that affidavits supporting and opposing summary judgment be made on personal knowledge. Personal knowledge is the awareness "of factual truth which does not depend on outside information or hearsay." Shah v. Getz , 6th Dist. Wood No. 93WD117, 1994 WL 319040, *1 (June 30, 1994). Appellant's averment is not based on her own personal knowledge.
{¶ 34} Civ.R. 56(E) also requires that affidavits "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Appellant does not show affirmatively the basis she has for believing the Board hired a white male to replace her, as she did not provide the man's name or his hire date or start date, nor did appellant produce any documentation or deposition testimony to corroborate her "information" that a white male was hired to replace her. As such, the averment is not proper evidence for summary judgment purposes and is insufficient as a matter of law either to establish that she was actually replaced by a white man or to create a genuine issue of material fact as to that issue. We therefore find appellant has failed to meet her burden to present evidence that she was replaced by a person from outside of the protected class.
{¶ 35} Based upon the foregoing, we find appellant failed to meet her initial burden of establishing a prima facie case of race or sex discrimination against appellees. We therefore affirm the trial court's decision to grant summary judgment on the discrimination claims, albeit based upon different legal reasoning.
Retaliation
{¶ 36} R.C. 4112.02(I) provides it is "an unlawful, discriminatory practice for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge * * * in any * * * proceeding * * * under sections 4112.01 to 4112.07 of the Revised Code."
{¶ 37} In order to establish a prima facie case of retaliation, an employee must show: (1) she engaged in protected activity; (2) the employer knew she engaged in protected activity; (3) the employer subsequently took an adverse employment action; and (4) the adverse action was causally related to the protected activity. Yost v. City of Sandusky , 6th Dist. Erie No. E-14-011, 2015-Ohio-805, 2015 WL 998491, ¶ 33.
{¶ 38} Appellant states in her memorandum in opposition to the motion for summary judgment that "[d]efendants argue that reasonable jurors could not conclude there was any causal connection between Plaintiff's filing of her OCRC charge on January 28, 2013 and the Board's June 25, 2013 termination resolution. The argument is based on, 'for example,' the Seventh *1075 Circuit case of Lewis v. Holsum of Fort Wayne , 278 F.3d 706 (7th Cir.2002) in which the court 'emphasized that a 4-month interval between protected activity and discharge is too long to support a prima facie case of retaliation.' " Appellant then cites to and relies upon the following passage in Lewis :
In support of her claim, Lewis argues that an inference of retaliation can be drawn from the timing of the events. She filed her charge with the EEOC in October 1997 prior to her January 1998 termination. This attenuated sequence of events, however, without more, is insufficient to make out a prima facie case of retaliation. Lewis v. Holsum of Fort Wayne, Inc. , 278 F.3d 706, 711 (7th Cir.2002).
Appellant asserts "there is 'more' here," and sets forth the timeline for the evidentiary hearing (November 2012), when briefing concluded (March 2013), the issuance of the referee's decision (May 2013), and the Board's decision (June 2013). Appellant submits "[i]n other words, until the decision issued, the Board was in limbo regarding any action respecting Plaintiff." Appellant offers "[i]t is common knowledge that the Board holds regular meetings only once per month and that the meetings generally last for only one evening." Appellant maintains "the correct inference is that only four Board 'working days' passed between the time the Plaintiff filed her OCRC charge and the time the Board enacted the retaliatory resolution." Appellant referred to a public announcement by the Board's president as well as Larry Sykes' affidavit.
{¶ 39} Upon review, appellant did not establish a prima facie case of retaliation. The record does show that appellant engaged in a protected activity, by filing her OCRC charge, the Board knew of the charge, and the Board subsequently terminated appellant's employment. However, there is no evidence that the termination was causally related to the OCRC charge. While appellant argued "the correct inference is that only four Board 'working days' passed between the time the Plaintiff filed her OCRC charge and the time the Board enacted the retaliatory resolution," this argument is not supported by evidence in the record, admissible or otherwise, and is insufficient to establish a causal link.
{¶ 40} Based upon the foregoing, we find appellant failed to meet her burden of establishing a prima facie case of retaliation. We therefore affirm the trial court's decision to grant summary judgment on the retaliation claim, albeit based on different legal reasoning.
Wrongful Infliction of Emotional Distress
{¶ 41} Intentional infliction of emotional distress demands proof that the defendant acted by extreme and outrageous conduct to intentionally or recklessly cause severe emotional distress to the plaintiff. Yeager v. Local Union 20, Teamsters , 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983), citing Restatement of the Law 2d, Torts, Section 46(1), at 71 (1965). Extreme and outrageous conduct is described as " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Yeager at 375, 453 N.E.2d 666. Liability for conduct alleged to be extreme and outrageous " 'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " Id.
{¶ 42} Appellant cites to portions of the referee's findings as examples of extreme and outrageous conduct on the part of appellees, where the referee describes: a "planned public humiliation" of appellant by one appellee in a Building *1076 Leadership Team meeting; one appellee, DeVeaux's principal, who "poisoned the well" for appellant at Spring; and, a "toxic work environment" at DeVeaux and Spring. As support for her position, appellant cites to Foster v. McDevitt , 31 Ohio App.3d 237, 240, 511 N.E.2d 403 (2d Dist.1986), where the court relied on "Comments e and f to Section 46 of the Restatement * * *: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Appellant argues that the individual appellees, who were in power over her, asserted their authority in a manner that was outrageous, and the Board abused it power.
{¶ 43} Upon review, appellant's first example involved Spring's principal telling appellant in a group meeting, "[T]his is my building, (and you) are not the Principal * * * you're not going to come in here and challenge things; you need to understand that I am the Principal, and yes, I am talking to you in my leader's voice." The second example involved DeVeaux's principal who, in effect, prevented appellant from having a fresh start at Spring, as evidenced by Spring's principal keeping a log on appellant from almost the first day of school. Appellant's third example was the referee's description of appellant's later tenure at DeVeaux and tenure at Spring as a "toxic work environment."
{¶ 44} In Mendlovic v. Life Line Screening of Am., Ltd. , 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 48-49 (8th Dist.), the court determined the employer's conduct was not extreme and outrageous when the employer yelled at the employee and "barked" at the employee at a company meeting. Likewise, in Smith v. Lebanon City Schools , 12th Dist. Warren No. CA99-02-024, 1999 WL 1016185, *7 (Nov. 8, 1999), the court concluded the following conduct did not rise to the level of extreme and outrageous conduct: (1) the employer yelled at and berated the employee in front of others on numerous occasions; (2) the employer falsely accused the employee of causing problems and stealing money; (3) the employer called the employee names like "moronic and uneducated" and (4) the employer created a hostile work environment by reassigning tasks, having mood swings and trying to pit employees against one another.
{¶ 45} We find the examples offered by appellant as extreme and outrageous conduct bear some similarities to the conduct in Mendlovic and Smith . We further find appellant's examples constitute actions which are, at most, "mere insults, indignities, * * * annoyances, petty oppressions, or other trivialities," and are not sufficient to establish a claim for intentional infliction of emotional distress. We therefore affirm the trial court's decision granting summary judgment to appellees on the intentional infliction of emotional distress claim, albeit based on different legal reasoning.
Tortious Interference with Business Relationship
{¶ 46} Tortious interference with a business relationship happens when a person, without privilege to do so, induces or otherwise purposely causes a third person to not enter into or continue a business relationship with another person. A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Contr. Trades Council , 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995).
{¶ 47} Appellant contends appellees argue, as supervisors, they are immune from liability. Appellant asserts, however, in order for a supervisor to be exempt from liability, he or she must have been acting within the scope of his or her duties in his *1077 or her treatment of the plaintiff. Appellant asserts supervisors and managers are liable for their personal acts of discrimination. As such, appellant submits the individual appellees were not acting within the scope of their job duties when they discriminated against her.
{¶ 48} Upon review, since appellant failed to establish a prima facie case of discrimination against appellees, appellant's claim that her supervisors were acting outside of the scope of their duties when they discriminated against her is unsubstantiated by the record. We therefore affirm the trial court's decision granting summary judgment to appellees on appellant's tortious interference with business relationship claim, albeit based on different legal reasoning.
False Light
{¶ 49} A person who gives publicity to a matter concerning another person which places the other person in a false light before the public is subject to liability "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Welling v. Weinfeld , 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61.
{¶ 50} Appellant argues appellees placed her before the public in the false light that she is "an educator who uses inappropriate physical discipline with students, makes threats, uses racially tinged language, and intimidates teachers." Appellant claims the "Board through its agent employees released the accusations against Plaintiff to the media." Appellant asserts the local newspaper ran an article about her and there was a posting on a local news channel's Facebook page and comments to that posting regarding her situation. In addition, appellant submits Spring's principal filled out a crime report ("the crime report") naming appellant as the suspect for the crime of disorderly conduct.
{¶ 51} Upon review, appellant has presented no evidence that the "Board through its agent employees released the accusations against Plaintiff to the media," or that the crime report was ever made public. In fact, the record shows Spring's principal testified at the referee hearing that the crime report she typed up was never filed in any law enforcement agency. In addition, appellant has not proven that the information about her was false. See Dickinson v. Spieldenner , 6th Dist. Lucas No. L-16-1041, 2017-Ohio-667, 2017 WL 728316, ¶ 31. It follows that appellant's false light claim fails. We therefore affirm the trial court's decision granting summary judgment to appellees on appellant's false light claim, albeit based on different legal reasoning.
Defamation
"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." (Citation omitted.) Dickinson at ¶ 14.
{¶ 52} Appellant argues appellees furnished false information to the ODJFS (Ohio Department of Job and Family Services) about her being suspended due to a criminal investigation. Appellant also maintains the crime report as well as the false statements in the Board's termination resolution were made with legal malice.
*1078 {¶ 53} Appellees contend they are afforded an absolute privilege for all of the statements made to the ODJFS.
{¶ 54} R.C. 4141.21, provides, in pertinent part:
Confidentiality of information * * *
[T]he information maintained by the director of job and family services or furnished to the director by employers or employees pursuant to this chapter is for the exclusive use and information of the department of job and family services in the discharge of its duties and shall not be open to the public or be used in any court in any action or proceeding pending therein, or be admissible in evidence in any action, other than one arising under this chapter * * *.
{¶ 55} Upon review, the record shows a representative of ProComp Risk, on behalf of TPS, supplied information to ODJFS, in error, that appellant was suspended due to a criminal investigation. Nevertheless, this information is confidential and not admissible as evidence in support of appellant's defamation claim. With respect to the crime report and the Board's termination resolution, appellant has not proven that this information was false or defamatory. It follows that appellant has not established a prima facie case of defamation. We therefore affirm the trial court's decision granting summary judgment to appellees on appellant's defamation claim, albeit based on different legal reasoning.
Unlawful Discrimination/Aiding and Abetting Claims
{¶ 56} Appellant has offered no argument or evidence in support of these claims. An appellant has the burden on appeal. See App.R. 16(A)(7). " 'It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.' State v. Ashby , 9th Dist. No. 06CA0077-M, 2007 Ohio 3118, 2007 WL 1805029, ¶ 26 (quoting State v. Taylor , 9th Dist. No. 2783-M, 1999 WL 61619 (Feb. 9, 1999)." State v. Rodriguez , 6th Dist. Wood No. WD-08-011, 2009-Ohio-4059, 2009 WL 2477683, ¶ 25. Accordingly, appellant's third assignment of error is not well-taken as to these claims.
{¶ 57} In light of the foregoing, appellant's third assignment of error is not well-taken. Since appellant's third assignment of error is dispositive of this appeal, it is not necessary to discuss appellant's first and second assignments of error relating to the honest belief rule. See App.R. 12(A)(1)(c).
{¶ 58} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.
Judgment affirmed.
Mark L. Pietrykowski, J.
Thomas J. Osowik, J.
CONCUR.

Speller , Lucas C.P. No. CI13-3777, 2013 WL 12078744 (Dec. 12, 2013), aff'd, 2015-Ohio-2672, 38 N.E.3d 509.